Peter S. and Susan A. MILAZZO,
Plaintiffs,

v.

UNITED STATES of America and
Commissioner of Internal
Revenue, Defendants.

Stanley H. and Elizabeth S.
CASE, Plaintiffs,

v.

UNITED STATES of America and
Commissioner of Internal
Revenue, Defendants.

John F. DZIUBALA, Plaintiff,

v.

UNITED STATES of America and
Commissioner of Internal
Revenue, Defendants.

James M., Jr. and Shelley BOYCE,
Plaintiffs,

v.

UNITED STATES of America and
Commissioner of Internal
Revenue, Defendants.

Civ. Nos. 83–1901–T, 83–1936–T,
83–1980–T and 83–2016–T.

United States District Court,
S.D. California.

Jan. 16, 1984.

Peter and Susan Milazzo, plaintiffs pro se.

Stanley and Elizabeth Case, plaintiffs pro se.

Peter K. Nunez, U.S. Atty., Kathryn A. Snyder, Asst. U.S. Atty., San Diego, Cal., Nancy G. Morgan, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

John F. Dziubala, plaintiff pro se.

James M. Jr. and Shelley Boyce, plaintiffs pro se.

## ORDER

TURRENTINE, Chief Judge.

The plaintiffs in these actions filed what purport to be their income tax returns for 1982, refusing to furnish any financial data on the forms on the basis of their constitutional rights against self-incrimination. The Internal Revenue Service ("IRS") determined in each case that the purported tax return could not be processed and that it constituted a "frivolous" return within the meaning of § 6702 of the Internal Revenue Code ("Code") of 1954 (26 U.S.C.),

which was added to the Code by § 326(a) of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. Law No. 97–248. The $500 civil penalty provided for in § 6702 was duly assessed. Plaintiffs complied with § 6703 of the Code by paying 15% ($75) of that fine and are therefore entitled to challenge the assessment of the penalty in an original action in this court. Jurisdiction is proper under 28 U.S.C. § 1346(a)(1). The plaintiffs all filed complaints alleging several constitutional objections to the imposition of the fines and the government now moves for summary judgment in each case.

These four cases have been consolidated for hearing and for disposition in this order due to their essential identity. The only means of distinguishing among the actions is to examine the plaintiffs' names in the captions. The four complaints are, paragraph for paragraph, identical, as are the four *ex parte* motions for continuance. The papers which the plaintiffs individually filed with the IRS at the time they mailed in their tax forms also appear to have been photocopied or transcribed from a common source. Judicial economy is thus served by considering these cases together.

### I. SECTION 6702 PROPERLY WAS APPLIED TO PLAINTIFFS' TAX RETURNS.

The plaintiffs argue that the penalty contained in § 6702 does not apply to "returns which do not report a self-assessment" of tax. On the contrary, plaintiffs' conduct is the *raison d'etre* of § 6702. Section 6702(a)(1)(A) specifically provides that the $500 penalty shall be assessed:

> If any individual files what purports to be a return of tax imposed by subtitle A but which does not contain information on which the substantial correctness of the self-assessment may be judged.

Indeed, the four returns involved in these cases fit quite comfortably into one of the four examples provided in the legislative history: a return which contains insufficient information by which to calculate the tax, or contains inconsistent information, or otherwise reveals a frivolous position or a desire to impede the tax laws. S.Rep. No. 494, 97th Cong., 2d Sess., 277–78 (1982), U.S.Code Cong. & Admin.News, p. 781. The four returns involved here contain the plaintiffs' names and addresses, but are almost wholly devoid of financial information. The entries on most lines of the standard forms 1040 read "object." Two of the returns even more obviously reveal an intent to impede the revenue process: plaintiffs Case and Milazzo refused to even provide their social security numbers. Curiously, these plaintiffs were good enough to note that they received no farm income in 1982.

This law was clearly passed to deal with tax protesters, and no application could be more appropriate than the four in issue here.

### II. PLAINTIFFS' ASSERTIONS OF THE FIFTH AMENDMENT PRIVILEGE ARE SPURIOUS.

Plaintiffs' tax returns also fit within another of the examples enumerated in the Senate Report on § 6702:

> returns in which many or all of the line items are not filled in, except for spurious constitutional objections.

S.Rep. No. 494, *supra*, at 277–78, U.S.Code Cong. & Admin.News, p. 1024. The single word "object" appears on most of the lines of plaintiffs' tax returns, and their accompanying letters and memoranda to the IRS make it clear that plaintiffs meant to assert their privilege against self-incrimination. In their complaints, they admit that their tax returns are lacking in required financial information and that their claims of privilege are the reason.

As all of the plaintiffs note in their papers, the credit for the privilege against self-incrimination contained in the Fifth Amendment to the Constitution belongs to James Madison, its author and advocate. However, I do not believe that the manner in which that privilege has been invoked in the instant cases is even remotely akin to what that most eminent of the Framers had in mind.

■ Fortunately, the court does not have to rely on its historical intuition in this matter, as there is ample case law. For more than fifty years it has been established that a taxpayer may not use the Fifth Amendment to refuse to provide *any* financial information on his or her federal income tax return. *United States v. Sullivan,* 274 U.S. 259, 263, 47 S.Ct. 607, 607, 71 L.Ed. 1037 (1927); *United States v. Heise,* 709 F.2d 449, 451 (6th Cir.1983); *United States v. Neff,* 615 F.2d 1235, 1239 (9th Cir.1980), *cert. denied* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). In fact, the courts have consistently held that when the data provided on a purported return are so incomplete that the tax liability cannot be computed, the filed document does not even constitute a tax return. *Heise, supra,* at 451; *Edwards v. Commissioner,* 680 F.2d 1268, 1269–70 (9th Cir.1982); *United States v. Pilcher,* 672 F.2d 875, 877 (11th Cir.1982), *cert. denied* 459 U.S. 973, 103 S.Ct. 306, 74 L.Ed.2d 286 (1982); *Beatty v. Commissioner,* 667 F.2d 501, 502 (5th Cir. 1982); *United States v. Edelson,* 604 F.2d 232, 234 (3d Cir.1979).

A citizen remains free to claim the Fifth Amendment privilege on a tax return, of course—but there are certain requirements that must be met. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *United States v. Neff, supra,* at 1240. Nor, as plaintiffs seem to think, is the validity of a claim of privilege a question for a jury. When a person "takes the Fifth," "it is for the court to decide whether his silence is justified." *Hoffman, supra,* 341 U.S. at 486, 71 S.Ct. at 818.

In *United States v. Neff, supra,* the Ninth Circuit set out the applicable standards for invoking the Fifth Amendment in tax cases in an opinion by Judge Wallace. The defendant had appealed his conviction under Code § 7203 for willful failure to file a return. His returns, like those in the instant cases, contained no financial infor-

mation and numerous entries of "object: self-incrimination." Judge Wallace wrote that in order to claim the privilege validly, a defendant must be faced with "substantial hazards of self incrimination" that are "real and appreciable" and not merely "imaginary and unsubstantial." Moreover, he must have "reasonable cause to apprehend [such] danger from a direct answer to the questions posed to him. The information that would be revealed by direct answer need not be such as would itself support a criminal conviction, however, but must simply furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Neff, supra,* at 1239 (citations omitted).

■ Here, as in *Neff,* nothing suggests that plaintiffs' responses to mundane tax questions would be the least bit incriminating. The income tax questions are "neutral on their face and directed to the public at large." *Ibid.* Nor does "the setting in which they were asked—a general inquiry about [the taxpayer's] financial and tax status, to be completed in the privacy of his own home—alter the non-incriminatory nature of those questions." *Id.* at 1240. In fact, the "peculiarities of the case," *ibid.,* suggest that plaintiffs' refusal to complete their forms 1040 has nothing to do with the constitutional policies which animate the Fifth Amendment. This is a case of tax protesters who simply do not want to shoulder their share of the nation's tax burden.

· The court is not presented here with individual citizens exercising their right against self-incrimination in good faith. These plaintiffs have marched virtually in lock-step. Every paper they have filed in these actions—be it the refund claim, the memorandum on the Fifth Amendment, the complaint or the motion for a continuance—seems to have been copied, line for line, from the same source. Perhaps the plaintiffs all subscribe to the same tax protester's newsletter. The typefaces vary, but the song remains the same—and the

tune is one of broad objection to paying taxes along with the rest of us.

■ In such a case where the circumstances appear innocuous, an assertion of privilege must be overruled unless the party makes a "positive disclosure" indicating where the danger lurks. *McCoy v. Commissioner*, 696 F.2d 1234, 1236 (9th Cir. 1983); *Neff, supra*, at 1238; *see also Hoffman v. United States, supra*, 341 U.S. at 486, 71 S.Ct. at 818. Despite the plaintiffs' apparent familiarity with the nuances of Fifth Amendment law—each of them appended to his or her tax return an identical 14-page memorandum on the subject, replete with citations—they have failed to mention any facts which would make out a plausible claim for the privilege. They simply have not met their burden. This court is therefore compelled to find that the plaintiffs' assertions of Fifth Amendment privilege are patently frivolous and thus squarely within the core of conduct proscribed by 26 U.S.C. § 6702.

## III. THE CONSTITUTION DOES NOT REQUIRE A HEARING BEFORE ASSESSMENT OF A § 6702 CIVIL FINE.

Plaintiffs complain that they have been denied due process of law as guaranteed by the Fifth Amendment because no hearing was held on their claims of privilege prior to the imposition of the $500 fine. There is no doubt that Congress' intent was to have the fine assessed immediately and allow the non-taxpayers to seek review in an original action after filing a claim with the IRS and paying 15% of the penalty. Immediate assessment was deemed necessary in order to deter the filing of frivolous and non-responsive returns by tax protesters willing to take their chances in the "audit lottery." S.Rep. No. 494, 97th Cong., 2d Sess., 277 (1982), U.S.Code Cong. & Admin. News, p. 1024.

■ In 1916 the United States Supreme Court dealt with an argument that a *post facto* suit for a refund was wanting in due process by stating: "[W]e think it suffices to state that contention to demonstrate its entire want of merit." *Dodge v. Osborn*, 240 U.S. 118, 122, 36 S.Ct. 275, 277, 60 L.Ed. 557 (1916); *see also Phillips v. Commissioner*, 283 U.S. 589, 595, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931). More than half a century later, the law remains the same. *See, e.g., Bob Jones University v. Simon*, 416 U.S. 725, 746, 94 S.Ct. 2038, 2050, 40 L.Ed.2d 496 (1974). As the Ninth Circuit has noted on more than one occasion, "Congress can condition the taxpayer's right to contest the validity of a tax assessment pretty much as it sees fit." *McCoy v. Commissioner, supra*, at 1237; *Rockwell v. Commissioner*, 512 F.2d 882, 887 (9th Cir.1975), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). The penalty assessment and review procedure of § 6702 has been upheld on precisely these grounds, *see, e.g., Bearden v. Commissioner*, 575 F.Supp. 1459 (D.Utah 1983), as has the parallel penalty apparatus of 26 U.S.C. § 6682. *See, e.g., Riley v. Commissioner*, 566 F.Supp. 21 (S.D.Ohio 1983); *Evans v. IRS*, 539 F.Supp. 805 (E.D.Mich.1982).

## IV. THE ENACTMENT OF TEFRA DID NOT VIOLATE THE ORIGINATION CLAUSE.

Plaintiffs challenge the constitutionality of TEFRA, which appended § 6702 to the Code, on the ground that since the bill originated in the Senate, it transgressed Article I, § 7, cl. 1 of the Constitution:

All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills.

■ The flaw in this argument is that it is based on an erroneous assumption: TEFRA did not originate in the Senate. The bill that was signed into law as TEFRA was born in the House of Representatives as H.R. 4961, a bill dealing with the collection of taxes. H.R.Rep. No. 404, 97th Cong., 1st Sess., 9 (1981). Although the bill was dramatically altered by amendment in the upper house of Congress, it remained a revenue bill, regardless whether it raised taxes or lowered them. The Senate amendments were "germane to the subject

matter of the bill and not beyond the power of the Senate to propose." *Flint v. Stone Tracy Co.,* 220 U.S. 107, 143, 31 S.Ct. 342, 346, 55 L.Ed. 389 (1911).

Thus, there was no violation of the Origination Clause. *Frent v. United States,* 571 F.Supp. 739, 742 (E.D.Mich.1983).

Plaintiffs' remaining arguments, like their tax returns, give new meaning to the term "frivolous."

### V. SECTION 6702 DOES NOT VIOLATE THE EIGHTH AMENDMENT.

█ Plaintiffs contend that imposing a penalty for filing frivolous tax returns constitutes cruel and unusual punishment. Not only does this provision of the Code not violate the Eighth Amendment, it does not even *implicate* it. That amendment's prohibition is directed toward criminal punishments, not civil fines. *See Powell v. Texas,* 392 U.S. 514, 531–32, 88 S.Ct. 2145, 2153–2154, 20 L.Ed.2d 1254 (1968); *Sims v. Waln,* 388 F.Supp. 543, 549 (S.D.Ohio 1974), *aff'd* 536 F.2d 686, 688 (6th Cir.1976), *cert. denied,* 431 U.S. 903, 97 S.Ct. 1693, 52 L.Ed.2d 386 (1977). The courts have long recognized that Congress has the authority to enact civil penalties in order to secure compliance with federal income tax laws. *See, e.g., Helvering v. Mitchell,* 303 U.S. 391, 401, 58 S.Ct. 630, 634, 82 L.Ed. 917 (1938).

█ Plaintiffs' passing comment in their complaints that the fine imposed on them constitutes a bill of attainder forbidden by Article I, § 9, cl. 3 of the Constitution, is wholly insupportable. Section 6702 of the Code does not legislatively inflict punishment upon named individuals or an identifiable group. See L. Tribe, *American Constitutional Law* §§ 10–5, 10–6 (1978). Although it is obviously true that Congress enacted § 6702 because of its concern about the activities of tax protesters such as the plaintiffs, the provision penalizes illegal conduct, not tax protesters as such. A law that fines those who file frivolous tax returns in order to deter such activity is no more a bill of attainder than a law that punishes murderers in order to deter homicide. As Justice Frankfurter explained years ago, "So long as the incidence of legislation is such that the persons who engage in the regulated conduct, be they many or few, can escape regulation merely by altering the course of their own present activities, there can be no complaint of an attainder." *Communist Party v. Control Board,* 367 U.S. 1, 88, 81 S.Ct. 1357, 1406, 6 L.Ed.2d 625 (1961).

### VI. SECTION 6702 DOES NOT INFRINGE PLAINTIFFS' RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES.

█ This argument is the height of silliness. Plaintiffs appeared before this tribunal for the very purpose of seeking redress for the fines imposed upon them. There is no sense in which their First Amendment rights have been abridged.

### VII. PLAINTIFFS' SEPARATION OF POWERS ARGUMENT IS WITHOUT MERIT.

█ Plaintiffs' final argument is that § 6702 violates the principle of separation of powers by conferring judicial power on members of the executive branch and making the IRS a "law unto itself." As explained above, the manner in which Congress has chosen to impose civil penalties on those who file frivolous tax returns complies fully with the dictates of the Federal Constitution. Plaintiffs nevertheless contend, in an argument that essentially paraphrases the Preamble to the Constitution, that § 6702 "threaten[s] ... domestic tranquility" and "insure[s] ... chaos and the disintegration of the United States." Although it is rather colorful, the argument does not merit a reply.

### CONCLUSION

Although plaintiffs may believe themselves to be part of a grand American libertarian tradition, there is no sense in which their behavior rises to the level of

Henry David Thoreau's famous tax protest against the War of 1846. The plaintiffs have been neither as high-minded nor as eloquent as that philosopher. He opposed an imperialistic war; the plaintiffs here simply seek to avoid paying their fair share of the costs of government. Few of us do it joyfully; but we do it. Thoreau himself counselled that "if the injustice [complained of] is part of the necessary friction of the machine of government, let it go, let it go: perchance it will wear smooth—certainly the machine will wear out." *On Civil Disobedience* (1849). Apparently unable to heed those wise words, plaintiffs now find themselves on the verge of the realization that in an ordered society, those who engage in civil disobedience must be prepared to suffer the consequences. The plaintiffs have had their sport. Now they must pay the price.

The tax returns filed by the plaintiffs are frivolous and the penalties imposed under 26 U.S.C. § 6702 are lawful and appropriate. The government's motion for summary judgment is therefore GRANTED.

SO ORDERED.