William T. FLINT, Plaintiff,

v.

STATE OF CALIFORNIA, California State Department of Consumer Affairs Board of Accountancy, Della Bousquet, Marie Shibuya-Snell, Donald Chang, Thomas E. Ilno, individually and in their official capacities, Defendants.

Civ. No. S–83–1407 LKK.

United States District Court, E.D. California.

Sept. 17, 1984.

444

Steven M. Kahn, Deputy Atty. Gen., Sacramento, Cal., for defendants.

Nageley, Tennant & Parshall, Walter K. Hurst, Sacramento, Cal., for plaintiff.

## OPINION AND ORDER

KARLTON, Chief Judge.

■ Plaintiff is a former employee of the State of California Board of Accountancy. He sues the Board and the State of California (hereinafter collectively referred to as "the State"), alleging employment discrimination in violation of Title VII (42 U.S.C. §§ 2000e *et seq.*), 42 U.S.C. §§ 1983, and 1985.[1] The State challenges this court's subject matter jurisdiction over the Title VII claims on the basis that plaintiff never received a "right to sue" letter from the United States Attorney General.[2] *See* 42 U.S.C. § 2000e–5(f)(1). Although it concedes that plaintiff received a "right to sue" letter from the Equal Employment Opportunity Commission (EEOC), the State argues that receipt of such a letter from the Attorney General is a statutory and jurisdictional prerequisite to suit, since the defendant is a state governmental entity. The plaintiff concedes that the State is a

governmental entity within the meaning of Title VII but argues that receipt of the "right to sue" letter from the EEOC is sufficient. *See* 29 C.F.R. § 1601.28(d) (1983). The question presented is a question of statutory interpretation, and thus a pure question of law. *See Dumdeang v. Commissioner*, 739 F.2d 452 (9th Cir.1984).

I

### THE STATUTORY SCHEME

■ A plaintiff bringing a Title VII employment discrimination action against his or her employer is required first to timely file a claim of discrimination with the EEOC. 42 U.S.C. § 2000e–5(b), (e); *Lynn v. Western Gillette, Inc.*, 564 F.2d 1282, 1285 (9th Cir.1977). The initial duty of the EEOC, once the charge is filed, is to determine whether "reasonable cause" exists to believe the charge against the employer is true. *Id.* § 2000e–5(b). If the EEOC finds no reasonable cause to believe that the charge is true, it is directed to dismiss the charge, and to notify the plaintiff of its action. *Id.* On the other hand, if it finds reasonable cause to believe the charge is true, the EEOC must attempt to eliminate the unlawful employment practice(s) "by informal methods of conference, conciliation, and persuasion." *Id.*

If the EEOC determines that there is "reasonable cause" to believe the charge is true, and the attempted conciliation is not successful, the role of the EEOC becomes dependent upon whether the respondent employer is a private employer, or a governmental entity. The EEOC is authorized to institute a civil action against any private (non-governmental) defendant in federal district court on plaintiff's behalf. *Id.* § 2000e–5(f)(1). If the EEOC nonetheless

---

1. Plaintiff's suit also names several individual defendants.

2. The State's jurisdictional challenge was raised in a motion to dismiss. *See* Fed.R.Civ.P. 12(b)(1). The remainder of its motion for dismissal under Rules 12(b)(1), and 12(b)(6), as well as the individuals' motions to dismiss, are disposed of in an accompanying, unpublished

memorandum and order. I conclude that the disposition of the remaining motions do not meet my standards for publication in the Federal Supplement. *See Kouba v. Allstate Insurance Co.*, 523 F.Supp. 148, 151 n. 2 (E.D.Cal.1981), *rev'd on other grounds*, 691 F.2d 873 (9th Cir. 1982).

declines to institute suit on behalf of the plaintiff, it is required to notify the plaintiff of its action (or decision not to act) within one hundred eighty (180) days from the filing of the charge. *Id.*

▮▮▮▮ When the employer is a state government, state agency, or political subdivision, considerations of "federalism" are implicated. As a general rule, a state's "sovereign immunity"—an ancient doctrine which is said to have survived the adoption of the Constitution—prevents any citizen from suing any state in federal court without that state's consent. *Employees v. Missouri Public Health Department*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1615, 36 L.Ed.2d 251 (1973). Congress, however, may abrogate a state's sovereign immunity if it chooses to do so under the authority granted to it by Section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). Under this authority Congress has, in Title VII, abrogated the bar of a state's sovereign immunity by providing for private actions against a state as an "employer." 42 U.S.C. § 2000e(a), (b); *Fitzpatrick*, 427 U.S. at 452, 96 S.Ct. at 2669 (intent of Congress to authorize suit against a state as employer is "clearly present").

Despite abrogation of a state's sovereign immunity, Congress has modified the procedural rules described above in at least one significant respect when the employer is a state, state agency, or political subdivision ("governmental entity"). In such cases the EEOC is expressly precluded from bringing suit against governmental entities under Title VII. 42 U.S.C. § 2000e–5(f)(1). Instead, if the EEOC has found reasonable cause to believe the charge is true, but has been unable to reach a conciliation agreement with the governmental entity, it must refer the case to the Attorney General of the United States. *Id.* Thereupon, the Attorney General may bring suit if he chooses to do so. *Id.* If the Attorney General declines to bring an action (notwithstanding the finding of "reasonable cause" to believe the charge is true), and has been unable to obtain a conciliation agreement, the statute directs him to so notify the aggrieved person so that he or she may bring suit. *Id.*

As defendants point out, this is a Title VII action against the State of California, and one of its departments,[3] and thus is subject to the modified rules applicable to Title VII actions against governmental entities.

## II

### FAILURE OF THE ATTORNEY GENERAL TO NOTIFY PLAINTIFF OF HIS RIGHT TO SUE

The State points out that plaintiff received no notification from the Attorney General. It reads 42 U.S.C. § 2000e–5(f)(1) as requiring the Attorney General, in every case involving a governmental defendant, to notify the plaintiff of whatever action the federal government takes.

I begin this discussion of statutory interpretation by recognizing that the language of 42 U.S.C. § 2000e–5(f)(1) is inherently ambiguous. In a situation (as here) where the EEOC has determined that there is no reasonable cause to believe that plaintiff's charges of discrimination are true, the relevant language of the statute requires that "the Commission, or the Attorney General in a case involving a government ... shall so notify the person aggrieved [4] ...." 42

---

**3.** The State Board of Accountancy is a part of the State's Department of Consumer Affairs. Cal.Gov't Code § 101 (West Supp.1984). Plaintiff concedes the Board is part of the State for Title VII and sovereign immunity purposes.

**4.** The relevant portion of the statute reads, in full:

If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a concil-

U.S.C. § 2000e–5(f)(1). The ambiguity in the statute arises from the uncertain nature of the "or" which connects "the Commission" with "the Attorney General." If the "or" is *inclusive*, then the section is properly read to authorize either the Commission or the Attorney General to notify the person aggrieved when the case involves a governmental entity. On the other hand, if the "or" is *exclusive*, then the section is properly read to authorize the Commission to notify the person aggrieved unless the case involves a governmental agency. If the case involves a governmental entity, under this reading, the statute only authorizes the Attorney General to notify the person aggrieved.

Thus far, the published opinions which have addressed or noted this section of the statute have concluded that only the Attorney General is authorized to notify the person aggrieved when the case involves a governmental entity. *See Fouche v. Jeckyll Island-State Park Authority*, 713 F.2d 1518, 1524 (11th Cir.1983); *Woods v. Department of Mental Health*, 581 F.Supp. 437, 441–43 (W.D.Mo.1984); *Lugo v. Charlotte*, 577 F.Supp. 988, 989–90 (W.D.N.C.1984); *English v. Department of Family and Children Services*, 546 F.Supp. 689, 691 (S.D.Ga.1982).

If this interpretation is correct, it necessarily follows that when the EEOC determines that no reasonable cause exists to believe the charges against the governmental entity are true, then *both* the EEOC and the Attorney General are required to give notice to the plaintiff that his or her case is being dismissed by the EEOC. Under 42 U.S.C. § 2000e–5(b), the EEOC is required to notify the plaintiff of its action, and under § 2000e–5(f)(1) (under this interpretation) the Attorney General is required to give the very same notification. While the uniformity of published opinion is initially impressive, an examination of the reasoning in support of the result, resting as it does on a now abandoned administrative practice, significantly diminishes its impact.

It appears that the published cases are primarily a remnant of the EEOC's former procedure for handling complaints. Prior to 1980, the EEOC regulations provided that in suits against a governmental entity, only the Attorney General was authorized to notify the plaintiff of his or her *right to sue*. *See* Schlei & Grossman, *Employment Discrimination Law* 1178 n. 10 (2d Ed.1983). This "right to sue" letter was a notice separate and apart from the notification received by the plaintiff from the EEOC which simply notified the plaintiff that the EEOC had found no reasonable cause to believe the charges were true. *See Lynn v. Western Gillette, Inc.*, 564 F.2d at 1285–86. Thus, under the earlier EEOC procedure, the plaintiff first received notification that the EEOC had dismissed the complaint, and thereupon (upon request of the plaintiff), the EEOC or the Attorney General would send the "right to sue" notice, which notified plaintiff that he or she had ninety days within which to bring a civil action. This "two letter" problem apparently inspired the EEOC to modify its procedures, and permit the notification to be sent by the EEOC, rather than the Attorney General, when it had found no reasonable cause to believe the charges against the governmental entity were true. *See Schlei & Grossman* at 1178 n. 10.

This earlier procedure apparently has had a profound effect on courts subsequently called upon to interpret the statute. Quite unanimously, the courts have interpreted the statute to *require* the procedure previously adopted, but since abandoned by the EEOC in favor of a more efficient one. *See* 29 C.F.R. § 1601.28(d) (1983) (EEOC may issue notification when no "reasonable cause" is found); *Missirlian v. Huntington Memorial Hospital*, 662 F.2d 546, 548

iation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and with-

in ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . .
42 U.S.C. § 2000e–5(f)(1).

n. 3 (9th Cir.1981), *cert. denied,* 456 U.S. 906, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982) (noting abandonment of "two tier" for "one tier" notification system). Besides the fact that the administrative procedure underlying the previous case law has been abandoned, other reasons suggest that these cases are unpersuasive.

■ It appears to this court that a reading of the statute advocated by the previous cases and the State here is incompatable with the statutory scheme as a whole and violates principles of statutory construction. In determining the proper interpretation of this section of the statute, the role of the district court is to ascertain the intent of Congress. *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *Shields v. United States,* 698 F.2d 987, 989 (9th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 73, 78 L.Ed.2d 86 (1983). Properly phrased, the question is: did Congress intend that, as a statutory prerequisite to suit, an employee of a governmental entity must receive notice from the Attorney General of his right to sue, or is notice from the EEOC sufficient? In seeking legislative intent we begin with the words of the statute, *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982), and read the subsection in issue in the context of the statute as a whole. *Stafford v. Briggs,* 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980); *Green v. Commissioner,* 707 F.2d 404, 405 (9th Cir.1983).

As noted, if the EEOC determines there is no "reasonable cause" to believe the charge is true, *it* dismisses the charge against the employer, whether it is a private or a governmental entity. 42 U.S.C. § 2000e–5(b).[5] Upon dismissal, it is the EEOC which is directed by statute to notify the plaintiff of the dismissal:

> If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action.

*Id.* As defendants and the previous cases read the statute, it requires redundant notices upon dismissal of the charge against the governmental entity by the EEOC, *i.e.,* notice to the plaintiff of the dismissal must be sent *both* by the EEOC, 42 U.S.C. § 2000e–5(b), *and* by the Attorney General. *Id.* § 2000e–5(f)(1).

Although strange, such a reading might not be viewed as implausible. An argument can be constructed that Congress' concern for the states' sovereignty was such that any time a state was named in a Title VII complaint, Congress wanted to assure that the Attorney General of the United States would be involved, if only to tell the plaintiff what he already knew— that the EEOC was dismissing his charge. On analysis, however, as I explain below, this rationale based upon concern with state sovereignty appears quite implausible.

■ A concern with a state's sovereignty might well justify the previous cases' reading of the statute if there was any possibility that the federal government might bring suit against the governmental entity to remedy an allegedly discriminatory employment practice. In the situation being analyzed, however, the federal government, pursuant to its investigation, found no basis upon which suit could be brought, and therefore the federal government determined that it would *not* be bringing suit. Even under the most extreme view of the currently popular notions of "federalism" it is difficult to understand how a state's sovereignty is implicated when the federal government decides *not* to interfere with a state's employment practices. To say the least, then, such an argument is not very

---

5. The subsection applies to the EEOC when the respondent is a governmental entity. The subsection goes on to require the agency to attempt to reach an informal settlement with the employer, and this process is subsequently referred to as applicable to charges against both the private and governmental employer. *See* 42 U.S.C. § 2000e–5(f)(1). The care with which Congress distinguished the several types of defendants in subsequent subsections is strong evidence that where no distinctions are made, the terms of the statute apply to all employers.

convincing. Nonetheless, it may be argued that even if the statute provides for a pointless procedure, it must be enforced, for there is no statutory or constitutional principle that requires the Congress to write only efficient laws. The observation is true but not relevant, for we are construing an ambiguous statute in order to determine what Congress commanded; and in performing this task, courts are enjoined not to construe congressional action as silly. In construing statutes, "absurd results are to be avoided." *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). With this canon of construction in mind, reading the statute as defendants propose becomes increasingly difficult.

Moreover, assuming arguendo, that the construction noted above is both plausible and explicable in terms of Congress' concern with state sovereignty, that rationale cannot explain an even more peculiar aspect of the scheme under the tendered construction. The statute provides for the EEOC to refer the case to the Attorney General *only* if it has determined 1) that there is reasonable cause to believe the charge against the governmental entity; and 2) it has been unable to reach a conciliation agreement with the governmental entity. 42 U.S.C. § 2000e–5(f)(1). If the EEOC has already determined that there is no "reasonable cause," it cannot reach step one, and thus does not refer the case to the Attorney General. *Id.* How, then, does the Attorney General even become aware of the action in order to send the notice to the plaintiff? No resolution of the dilemma appears from the text of the subsection.

■ If the State's reading of the statute is correct, then, the Attorney General is required to give notice to the plaintiff that the charge was dismissed by the EEOC. Not only is the notice utterly unnecessary since the EEOC itself is required to do precisely the same thing, but there is no mechanism for the Attorney General to accomplish his task since the case would never be referred to him in this situation. The result, if it does not violate the canon of rationality, comes perilously close. Fortunately, the words of the statute and common sense suggest another and better reading of the statute. It is the interpretation now adopted by the EEOC, the agency charged with enforcing the statute, and thus an interpretation entitled to deference by the courts if it is consistent with the congressional purpose, *Morton v. Ruiz*, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974), and is a "reasoned and supportable interpretation of the statute." *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980).[6]

The EEOC's regulations promulgating procedures for carrying out its enforcement responsibilities under Title VII are found at 29 C.F.R. §§ 1601.1–1601.80 (1983). Those regulations necessarily involve interpretation of the statute, *see* 29 C.F.R. § 1601.01, and thus are entitled to deference. *See, e.g., Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971) (*but see* n. 6). Under the EEOC's construction, the statute requires the EEOC to give notice even to a governmental entity if no "reasonable cause" was found, and the case was dismissed. 29 C.F.R. § 1601.28(d). If, however, the federal government declines to take action against the governmental entity *notwithstanding a finding of "reasonable cause,"* then the notice must be sent by the Attorney General. *Id.*[7] Nothing in this

---

**6.** Since November, 1980, the EEOC has interpreted the statute to grant it the authority to issue the "right-to-sue" notice. Prior to that date, it permitted only the Attorney General to issue the notice in a case involving a governmental entity. *See* Schlei & Grossman, *Employment Discrimination Law* 1178 n. 10 (2d Ed. 1983). Under such circumstances the deference accorded the EEOC's determination may be sig-

nificantly less weighty than otherwise. *See, Morton v. Ruiz*, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974); *McGoog v. Hegstrom*, 690 F.2d 1280, 1284 (9th Cir.1982). Nonetheless where, as here, the interpretation is linguistically possible and makes logical sense, there is no reason not to follow it.

**7.** "In all cases where the respondent is a government, governmental agency, or a political subdi-

interpretation is inconsistent with the statutory language. Moreover, it does not conflict with Congress' apparent interest in comity because a finding of no "reasonable cause" to believe the charge against the governmental entity precludes the possibility that the federal government might institute suit against a state. Finally, it is a sensible way to interpret the statute so that it is neither redundant nor logically inconsistent. Under the EEOC's interpretation, the need for two notices to the plaintiff, one of which is pointless, is eliminated.[8] It also avoids the procedural conundrum arising out of the State's reading that the Attorney General must inform the plaintiff about the status of a case which was never referred to him for his review. Under such circumstances, it cannot be said that the agency's interpretation, which clarifies the law and gives it an interpretation which makes its administration logically consistent, is unreasonable or inconsistent with the congressional purpose.

In this case, the notice from the EEOC states that it found that there was "not reasonable cause to believe" that plaintiff's charge was true. Thus, the EEOC properly notified plaintiff of its action in dismissing his charge. Because I hold that the statute does not require the notice to come from the Attorney General of the United States, the fact that it did not is irrelevant.[9] Although the defendants' argument is predicated upon a linguistically possible interpretation of the statute, the court finds it erroneous and thus insufficient to support a dismissal of plaintiff's claim.

IT IS SO ORDERED.

---

vision, the Commission will issue the notice of right to sue when there has been a dismissal of a charge.... In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue ...." 29 C.F.R. § 1601.28(d) (1983).

8. As a matter of good sense, only one notice is necessary to inform the plaintiff that he may now bring suit in court.

9. Under this court's interpretation of the statute, I have found that the plaintiff received the "right to sue notice" from the appropriate governmental agency. It is therefore unnecessary to discuss the State's argument that failure to receive that notice is a jurisdictional bar to the plaintiff's suit.