Steven A. FULLER and Karen M. Fuller, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Douglas W. SAMSKI, Plaintiff,

v.

UNITED STATES of America, Defendant.

Thomas A. JOLLY, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. Nos. S–83–1148, S–83–1223 and S–84–373.

United States District Court, E.D. California.

Aug. 12, 1985.

Steven & Karen Fuller, in pro per.

Douglas W. Samski, in pro per.

Thomas A. Jolly, in pro per.

Robert Kwan, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Yoshi-nori H.T. Himel, Asst. U.S. Atty., Sacramento, Cal., for U.S.

## ORDER

KARLTON, Chief Judge.

Plaintiffs in the three above-captioned cases are individuals whom the Internal Revenue Service ("IRS") has fined $500 for filing "frivolous" income tax returns for the 1982 taxable year. See 26 U.S.C. ("I.R.C.") § 6702(a). In timely compliance with the statutory requirements, plaintiffs paid 15% of the penalty ($75), and filed claims for refund with the IRS.[1] See I.R.C. §§ 6703(c)(1), 7422(a). The IRS denied the claims of each plaintiff. Plaintiffs then timely filed these actions seeking a determination of their liability for the penalties. See I.R.C. §§ 7422(a), (f)(1), and 6703(c)(2).

The United States sought dismissal, or in the alternative, summary judgment, in *Fuller* and *Samski*. The motions were denied on the basis that the penalty statute did not apply to these plaintiffs and therefore the plaintiffs could prove at trial that they are entitled to the refund relief they seek. Order of April 9, 1985. On its own motion, the court invited the parties to brief whether the plaintiffs in *Fuller, Samski,* and *Jolly* should be granted summary judgment, on the basis that the penalty statute does not apply to them. That motion is disposed of in this order.

## I

### STANDARDS

The plaintiffs are entitled to summary judgment on their refund claim if there is no genuine dispute as to any material fact and if, upon the undisputed facts, plaintiffs are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 468, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983). Since, as to the issue tendered,

---

1. The Government previously moved to dismiss *Samski* on the basis that plaintiff's refund was not timely filed with the IRS. The motion was denied. See Order, May 23, 1985, at 1055–56.

there are no material facts in dispute in these cases, resolution turns on whether plaintiffs are entitled to judgment as a matter of law. *See Dumdeang v. Commissioner,* 739 F.2d 452, 453 (9th Cir.1984).

## II

### RESOLUTION OF THE MOTION

Under the Tax Equity and Fiscal Responsibility Act, a $500 penalty is imposed upon:

any individual [who] files what purports to be a return of the tax imposed by subtitle A but which—(A) does not contain information on which the substantial correctness of the self-assessment may be judged, or (B) contains information that on its face indicates that the self-assessment is substantially incorrect....

I.R.C. § 6702(a)(1).

### A. *Undisputed Facts*

Each plaintiff filed what purported to be an income tax return for the 1982 taxable year. In *Fuller,* the plaintiffs answered most of the questions, but wrote "OBJECT" as answers to certain, specific questions on the return.[2] The return explained that the word "OBJECT" meant that the taxpayers refused to answer the question on the basis that they were invoking their rights under the Fifth Amendment against forced self incrimination. In *Samski,* the plaintiff answered all the questions, except that he wrote " * " as answers to certain specific questions on the return.[3] The return explained that " * " represented the taxpayer's objection on Fifth Amendment self incrimination grounds. In *Jolly,* the plaintiff wrote "object" to each and every question on the tax return, except that he

answered the questions as to his name and address, his spouse's occupation, and the amount withheld from his income. The return explains that "object" represents the taxpayer's objection on Fifth Amendment self incrimination grounds.

In every case, where the tax return requested information as to the taxpayer's total tax liability, these plaintiffs "objected" on Fifth Amendment grounds, stating that they refused to answer in order that they not be forced to incriminate themselves.[4]

### B. *The Law*

On these facts, the plaintiffs assert that they have not made a "self-assessment," and that therefore the penalty provision of TEFRA does not apply to them. As plaintiffs see it, they have not made a "self-assessment," but have instead specifically *refused* to make such an assessment. The Government on the other hand, argues that the plaintiffs have made a "self-assessment." In the alternative, the Government argues that even if the plaintiffs have not made a "self-assessment," such an assessment is not required under the statute. Resolution of the motion thus turns upon the correct interpretation of the statute, a pure question of law.

■ The goal of statutory construction is to "ascertain the congressional intent and give effect to the legislative will." *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). The tools for determining the legislative will are derived from established canons of statutory construction. *Cf., Blackfeet Tribe of Indians v. Montana,* 729 F.2d

---

**2.** The *Fuller* return represents that the taxpayers had no income from "wages, salaries, tips, etc.," and income of $24.07 from "interest." No other income is reported. The return contains "OBJECTIONS" to the amount of "business income," "capital gain or (loss)," "supplemental gains or (losses)," and "capital gain distributions." The return also contains "OBJECTIONS" to the reporting of the amount of "moving expense[s]," "self-employment tax," "minimum tax," "alternative minimum tax," "tax from recapture of investment credit," and "earned income credit." Other questions are answered "NONE," or are

left blank, an apparent representation that the questions are not applicable or that the answer is "ZERO." (for example, the amount of income from "Dividends" is left blank).

**3.** Samski wrote "NONE" as answers to the remaining questions.

**4.** The Fullers wrote "OBJECT," Samski wrote " * ", and Jolly wrote "object" in response to the question requesting that they state their total tax liability. (*See* Returns, Line 59).

1192, 1201 (9th Cir.1984) (en banc) (canons are guideposts to Congress' intent), *aff'd,* — U.S. ——, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985).

■ The starting point in any endeavor to construe a statute is always the words of the statute itself. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (quoting *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979)); *Brothers v. First Leasing,* 724 F.2d 789, 792 (9th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984). Unless the Congress has clearly indicated that its intentions are contrary to the words it employed in the statute, this is also the ending point of the interpretation. *American Tobacco,* 456 U.S. at 68, 102 S.Ct. at 1537 (quoting *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962)); *Tulalip Tribes of Washington v. F.E.R.C.,* 732 F.2d 1451, 1455 (9th Cir.1984) (citing *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).[5]

### 1. *What is a "Self-Assessment"?*

■ As noted, the plaintiffs in these cases "objected," on Fifth Amendment grounds, when asked to state their income tax liability. The first question of statutory construction, therefore, is whether or not the plaintiffs made a "self-assessment" within the meaning of the statute. Neither party has been able to identify a textual definition of "self-assessment" in the Internal Revenue Code itself, nor has the court's own research revealed one.

The definition of "assessment," however, is readily at hand. The Secretary of the Treasury is charged with making all "assessments" under the Internal Revenue Code. *See* I.R.C. § 6201(a). This duty is discharged by *"recording the liability of the taxpayer* in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." I.R.C. § 6203 (emphasis added). "Assessment" therefore refers to the Secretary's calculation of the taxpayer's liability, and the recording of that liability in the manner prescribed by law. *Cf. Rambo v. United States,* 492 F.2d 1060, 1061 n. 1 (6th Cir.1974), *cert. denied,* 423 U.S. 1091, 96 S.Ct. 886, 47 L.Ed.2d 103 (1976); *Cohen v. Gross,* 316 F.2d 521, 522–23 (3d Cir.1963). This interpretation of "assessment" is specifically supported by Supreme Court authority in explaining the notion of an "assessment":

> A tax is an exaction by the sovereign, and necessarily the sovereign has an enforceable claim against every one within the taxable class for the amount lawfully due from him. The statute prescribes the rule of taxation. Some machinery must be provided for applying the rule to the facts in each taxpayer's case, in order to ascertain the amount due. The chosen instrumentality for the purpose is an administrative agency whose action is called an assessment. The assessment may be a valuation of property subject to taxation which valuation is to be multiplied by the statutory rate to ascertain the amount of tax. Or *it may include the calculation and fix the amount of tax payable,* and assessments of federal estate and income taxes are of this type. Once the tax is assessed, the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives.

*Bull v. United States,* 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935) (emphasis added).

Under the ordinary usages of the English language, a "self-assessment" would appear to be an "assessment" which is accomplished by the taxpayer himself. In *Commissioner v. Lane-Wells Co.,* 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684 (1944), the

---

**5.** This court has recently bemoaned the Supreme Court's erratic phrasing and application of the "plain meaning" rule. *See Sierra Club v. Watt,* 608 F.Supp. 305, 332 n. 49 (1985). No benefit would be gained by restating that history here. Although sometimes this trial judge feels the rule's application differs from case to case, I assume that the rule's vitality is presently real. *See Garcia v. United States,* — U.S. ——, 105 S.Ct. 479, 482–83, 83 L.Ed.2d 472 (1984).

taxpayer denied liability for income taxes on the form it filed with the IRS, and failed to provide thereon information from which the IRS could calculate the liability. The court stated:

"[T]o obtain data on which corporations subject to the tax could be identified and assessed was the very purpose of requiring a separate return addressed to that liability.... [¶] Congress has given discretion to the Commissioner to prescribe by regulation forms of returns and has made it the duty of the taxpayer to comply. It thus implements the system of self-assessment which is so largely the basis of our American scheme of income taxation. The purpose is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished."

321 U.S. at 223–24, 64 S.Ct. at 513. The expected definition of "self-assessment" thus appears to be supported by the discussion in *Lane-Wells.* I therefore conclude that a self-assessment is the taxpayer's own representation on the income tax return of his or her tax liability.[6]

This conclusion is supported by Ninth Circuit authority. In *Jenney v. United States,* 755 F.2d 1384 (9th Cir.1985), the taxpayers claimed a "conscience deduction" on their income tax return, and reduced their tax liability accordingly. On an attached sheet of paper, the taxpayers reported their income, and what their tax would have been if the deduction were not considered. The question tendered to the court was whether the correct "self-assessment" had to appear on the proper line of the return or if it was sufficient that it appear on the attached sheet of paper. The court stated:

In our view, the term "self-assessment" refers to the amount of tax liability reported on the face of the return and not to the amount reported in the attached statements or explanations, because the purpose of our tax system of self-assessment is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished.

*Jenney,* 755 F.2d at 1386 (quoting *Lane-Wells,* 321 U.S. at 223, 64 S.Ct. at 513). The Government correctly points out that *Jenney* was not concerned with the definition of "self-assessment," but rather with *where* the "self-assessment" had to appear on the return, whatever its definition. Nevertheless, *Jenney* specifically stands for the proposition that whatever a self-assessment is, it is that representation which must be reported in the place of the tax return which asks for the taxpayer's tax liability.

The court states:

The taxpayers did not enter on lines 59 and 67 the correct amount due.... Had they done so, section 6702 would not apply because the self-assessment would be accurate.

*Id.* at 1386–87. Those lines[7] call for a statement of the "Total tax" due, and the "Total" credits against the tax due. It follows, then, that the "self-assessment" could only be the amount of the taxpayer's tax liability, as requested at Line 59 of the return.

Finally, I note that the Government itself appears to agree with this definition of "self-assessment." In arguing that plaintiff made such an assessment, it states: "[w]e believe that plaintiffs did make a 'self-assessment,' that is, a representation [of] what their tax liability was." (United States' Opposition at 13). In sum, there does not appear to be any serious dispute that a "self-assessment" is the taxpayer's

---

**6.** Alternatively, the self-assessment may be the providing, on the return, of enough information for the IRS to calculate the return. *See* I.R.C. § 6014. Neither side argues that plaintiffs have made a "self-assessment" sufficient for purposes of section 6014. In any event, neither party addresses the issue, and therefore I decline to reach it.

**7.** The *Jenney* court was discussing the same taxable year at issue in this case.

representation, on the tax return, of his or her tax liability.[8]

### 2. *Did Plaintiffs Make a Self-Assessment?*

■ The tax returns of each of the plaintiffs (including Jolly) are before the court on this summary judgment motion, and therefore I may resolve the question of whether a "self-assessment" was made in those returns. The conclusion appears to me inescapable that these plaintiffs failed to make a representation of what their tax liability was. Each of them specifically refused to make such a representation on the basis of their asserted Fifth Amendment right against compelled self-incrimination.[9] The Government offers no theory, whether legal, logical, or linguistic, in support of its apparent assertion that refusal to make any representation is functionally equivalent to the making of a false representation.[10] I conclude that for purposes of I.R.C. § 6703(a), these plaintiffs have failed to make a self-assessment.

### 3. *Is a Self-Assessment Necessary?*

The Government argues that no self-assessment is necessary in order for the IRS to impose the $500 fine for the making of a false self-assessment, or for the making of a self-assessment the correctness of which cannot be determined. I cannot agree. The Government's approach would require the court to add the provision "or does not contain a self-assessment," at I.R.C. § 6702(a)(1). As the statute currently stands, it contains no such provision and,

indeed, it *assumes* that a self-assessment has been made. If such an assumption were not implicit in the provision, it would make no sense; it would impose certain standards on self-assessments even though those self-assessments did not exist.[11]

■ The Government's interpretation of the statute violates two important canons of statutory construction. First, the court cannot rewrite a statute to conform to what it thinks Congress intended to say or what Congress "should" have said. *See Badaracco v. Commissioner,* 464 U.S. 386, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984) (*citing TVA v. Hill,* 437 U.S. 153, 194–95, 98 S.Ct. 2279, 2301–02, 57 L.Ed.2d 117 (1978)). Second, the court cannot interpret the statute so that it makes no sense. *See Flint v. California,* 594 F.Supp. 443, 448 (E.D.Cal.1984) (*quoting United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981)). Thus, the court will not add the words "or does not contain a self-assessment," nor can the court interpret the statute to impose a standard upon a representation of tax liability even when the representation has not been made.

### C. *The Cases*

The Government points out that numerous cases have granted summary judgment to the Government upon allegations indistinguishable from those before this court. This is of course a very serious matter which must be seriously addressed.

---

**8.** *Accord, Franklet v. United States,* 578 F.Supp. 1552, 1554–55 (N.D.Cal.1984), *aff'd,* 761 F.2d 529 (1985) (per curiam). In *Franklet,* the district court held that the plaintiffs, who had claimed "war tax credits," and had reduced their tax liabilities accordingly, had made "self-assessments" within the meaning of the penalty statute. The court stated that "[w]hatever other meaning may be attributed to the term 'self-assessment', it clearly includes a taxpayer's representations on the return as to the tax due or refund claimed." 578 F.Supp. at 1555. The Ninth Circuit affirmed the judgment "[f]or the reasons stated in the opinion." 761 F.2d at 530.

**9.** Because of my resolution of this case on statutory grounds, I do not reach the merits of plain-

tiffs' Fifth Amendment (or any other) claims. *But see, Hudson v. United States,* 766 F.2d 1288 (9th Cir.1985) (per curiam); *Jolly v. United States,* 764 F.2d 642 (9th Cir.1985).

**10.** Plaintiffs do not in these cases seek to represent their tax liability as "zero." They simply refuse to make any representation.

**11.** It does not seem a startling proposition that a statute which imposes standards upon a particular representation, implicitly assumes that the representation will be made. If the representation is not made, this court could not possibly determine whether the standard has been met.

In *Boday v. United States,* 759 F.2d 1472 (9th Cir.1985), the plaintiffs filed income tax returns essentially identical to those giving rise to these cases. The plaintiffs there, as here, sought a refund of the $500 penalty imposed by the IRS pursuant to I.R.C. § 6702. The circuit court affirmed the summary judgments granted in favor of the Government, finding against the plaintiffs on their Fifth Amendment claim, their Due Process claim, their vagueness claim, and their Origination Clause claim, all claims also made by these plaintiffs. The court did not, however, address the issue presented to this court, namely, whether the penalty provision applies to these plaintiffs at all since they have refused to make a self-assessment.[12] Under rather stringent standards recently announced by the Supreme Court, where an issue was not addressed, a court cannot assume that it was implicitly decided. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 918, 79 L.Ed.2d 67 (1984) (quoting *Hagans v. Lavine,* 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372, 1377 n. 5, 39 L.Ed.2d 577 (1974)) (even subject-matter jurisdictional questions are open until specifically addressed). There being no other Ninth Circuit cases addressing whether a self-assessment is necessary, the question must be considered open in this circuit.

The Government cites a slew of other cases in which summary judgment was granted to the Government on facts essentially identical to those before this court. Once again, however, in most of those cases the issue of whether a self-assessment was *necessary* was never addressed. *See Heitman v. United States,* 753 F.2d 33 (6th Cir.1984) (per curiam); *Martinez v.*

*I.R.S.,* 744 F.2d 71 (10th Cir.1984) (per curiam); *Baskin v. United States,* 738 F.2d 975 (8th Cir.1984) (per curiam); *Betz v. United States,* 753 F.2d 834 (10th·Cir.1985) (per curiam); *Brennan v. Commissioner,* 752 F.2d 187 (6th Cir.1984) (per curiam); *House v. United States,* 593 F.Supp. 139 (W.D.Mich.1984); *Liljenfeldt v. United States,* 588 F.Supp. 966 (E.D.Wisc.), *aff'd mem.* 753 F.2d 1077 (7th Cir.1984); *Miller v. United States,* 577 F.Supp. 980 (N.D.Ind. 1984); *Paulson v. United States,* 758 F.2d 61 (2d Cir.1985) (per curiam); *Boomer v. United States,* 755 F.2d 696 (8th Cir.1985) (per curiam); *Aune v. United States,* 582 F.Supp. 1132 (D.Ariz.1984), *aff'd mem.,* 765 F.2d 148 (9th Cir.1985); *Knottnerus v. United States,* 582 F.Supp. 1572 (N.D.Ill. 1984); *Ueckert v. United States,* 581 F.Supp. 1262 (D.N.D.1984); *Reed v. United States,* 581 F.Supp. 718 (D.Colo.1984); *Matz v. United States,* 581 F.Supp. 714 (N.D.Ill.1984); *Stamp v. Commissioner,* 579 F.Supp. 168 (N.D.Ill.1984); *Kloes v. United States,* 578 F.Supp. 270 (W.D.Wisc. 1984); *Bearden v. Commissioner,* 575 F.Supp. 1459 (D.Utah 1983); *Rowe v. United States,* 583 F.Supp. 1516 (D.Del.), *aff'd mem.,* 749 F.2d 27 (3rd Cir.1984). In most of the remaining cases cited by the Government, the question whether a self-assessment was necessary was not discussed because a self-assessment in fact had been made. *See Welch v. United States,* 750 F.2d 1101, 1103 (1st Cir.1985); *Kahn v. United States,* 753 F.2d 1208, 1211 (3d Cir.1985); *Franklet v. United States,* 578 F.Supp. 1552, 1554 (N.D.Cal.1984), *aff'd,* 761 F.2d 529 (9th Cir.1985) (per curiam).

Of the "legion" of cases cited by the Government, then, only two address the issue currently before the court: must the

---

12. Similarly, in none of the rash of recent Ninth Circuit cases involving or related to the issues in this case, has the circuit addressed this specific issue. *See Hudson v. United States,* 766 F.2d 1288 (1985); *Jolly v. United States,* 764 F.2d 642 (1985); *Franklett v. United States,* 761 F.2d 529 (1985); *aff'g* 578 F.Supp. 1552 (N.D.Cal.1984); *Olson v. United States,* 760 F.2d 1003 (8th Cir. 1985). *See also, Harris v. United States,* 758 F.2d 456 (1985) (Origination Clause); *Nunley v. Commissioner,* 758 F.2d 372 (1985) (per cu-

riam); *Thomas v. United States,* 755 F.2d 728 (1985). In *Hudson,* the court apparently assumed that the statute reached the conduct of those who failed to make a self-assessment. *Hudson,* 766 F.2d at 1292. In *Jolly,* one of the IRS' reasons for assessing the penalty was plaintiff's failure to make a self-assessment. The plaintiff did not raise the issue before the Ninth Circuit, however, and the court did not address it. *See Jolly,* 764 F.2d at 643.

plaintiffs make a "self-assessment" of their tax liability before the penalty provision of I.R.C. § 6702(a) may apply to them?

In *Vaughn v. United States*, 589 F.Supp. 1528 (W.D.La.1984), plaintiff made a "self-assessment" on his income tax return. He reported "NONE" as his total tax due. *Id.* at 1531. Nonetheless, the court states:

> Vaughn asserts in his complaint that section 6702 does not apply to tax returns that do not report a self-assessment. This assertion is inconsistent with the legislative history, which states that "the penalty is available against any individual filing a purported return in which insufficient information to calculate the tax is given...."

*Id.* The statement is dicta. It was completely unnecessary since the court had already held that the plaintiff had in fact made a self-assessment.

The only remaining case which specifically deals with this issue is *Milazzo v. United States*, 578 F.Supp. 248 (S.D.Cal.1984). I set out the relevant portions of the court's opinion on the issue:

> The plaintiffs argue that the penalty contained in § 6702 does not apply to "returns which do not report a self-assessment" of tax. On the contrary, plaintiffs' conduct is the *raison d'etre* of § 6702.... [¶] This law was clearly passed to deal with tax protesters, and no application could be more appropriate than the four in issue here.

*Milazzo*, 578 F.Supp. at 250. There are two reasons that require me respectfully to disagree with the conclusion reached in *Milazzo*. First, the opinion assumes that congressional intent and congressional motivation are the same thing; as I shall explain, the difference is crucial, and in this case, dispositive. Second, the opinion assumes

that "self-assessment" means the amount of the tax due rather than the taxpayer's representation of the tax due. As I have previously explained, this assumption appears to be incorrect.

*Milazzo* sums up its discussion of the "self-assessment" issue by noting what appears to be quite true: "This law was clearly passed to deal with tax protestors ...." *Id.* at 250. I will assume arguendo that Congress did wish to "deal with tax protestors." [13] Unlike the *Milazzo* court, however, I cannot end my analysis here, for this is only a recognition of Congress' motivation in enacting the legislation. It simply is not enough to discover what the Congress had in mind; [14] in construing congressional legislation, " '[w]e do not inquire what the legislature meant; we ask only what the statute means.' " *S & E Contractors, Inc. v. United States*, 406 U.S. 1, 13 n. 9, 92 S.Ct. 1411, 1418 n. 9, 31 L.Ed.2d 658 (1972) (quoting Holmes, J., "The Theory of Legal Interpretation," 12 Harv.L.Rev. 417, 419 (1898)).

The distinction between intent and motive is not merely academic, and certainly not in this case. As I have noted earlier, the primary task of a court engaged in statutory construction is to ascertain and give effect to the will of the Congress. (*See* § II(B), *supra*). This does not mean, however, that the court is to attempt to explore the subjective beliefs of the individual Members of Congress. It means only that the court must determine what Congress provided for in the statute. Thus, the task before the court is more precisely described as the determination of the legislative will *as expressed in the statute*, since the legislative will must be expressed in the words it chooses. *Banco Mexicano De Commercio e Industria v.*

---

**13.** Even if Congress sought to deal with tax protestors, legal analysis cannot end by denominating these plaintiff tax protestors, *i.e.* bad people, and therefore subject to the statute. There is no cliche more often repeated than that which says we are a nation of laws and not of men. One truth about a cliche is that oft repeated statements are oft repeated because they embody a deeply held set of beliefs. If that cliche has any meaning, it is that we decide

cases on the basis of the law and not ad hominem.

**14.** On analysis, of course, it is impossible to know what Congress had in mind. While members of Congress have minds, to speak of what Congress had in mind is to speak in metaphors, however seductive.

*Deutsche Bank,* 263 U.S. 591, 602, 44 S.Ct. 209, 211, 68 L.Ed. 465 (1924). Indeed, it is for this very reason that the first canon of statutory construction is to look to the words employed by the legislature. In the absence of ambiguity, those words are conclusive of the legislature's intent. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Commission,* 447 U.S. at 108, 100 S.Ct. at 2056).

In *Milazzo* (as in nearly all the cases dealing with "tax protestors"), the court looks to the legislative history to discern what the Congress had in mind without first determining that its intentions could not be gleaned from the words of the statute. *See Milazzo,* 578 F.Supp. at 250. I can find no ambiguity in the words used by the Congress and therefore find no need to look to the legislative history in an attempt to determine who the Congress really wanted to "get." In unambiguous terms, the Congress addressed the penalty statute only to those who had made a "self-assessment," whatever the meaning of the phrase might be. The legislative intent, therefore, as discernible *from the statute,* is that Congress wished to "get" certain people who had made "self-assessments." The statute itself further establishes that among those persons, Congress wished to "get" those whose self-assessments were obviously incorrect, or those who made it impossible (or perhaps difficult) for the IRS to determine whether or not the self-as-

sessment was correct. *See* I.R.C. § 6702(a)(1), (2).[15]

■ I say again, this court can discern no ambiguity in the words used in the statute. The court is therefore duty bound to find the meaning of the statute "in the language in which it is expressed." *United States v. Hill,* 248 U.S. 420, 424, 39 S.Ct. 143, 144, 63 L.Ed. 337 (1919).[16] My reading of the statute is that it applies only to persons who have at least made some representation of their tax liability; therefore it does not apply to any of these plaintiffs.[17]

Since plaintiffs did not provide a self-assessment, the penalty was wrongly imposed and summary judgment for the plaintiffs is GRANTED. The Clerk of the Court is directed to enter judgment on behalf of each of the plaintiffs forthwith.

IT IS SO ORDERED.

---

**15.** As to those who make no self-assessments, Congress may already have provided for them in other civil or criminal statutes, but that is not in issue here.

**16.** I do not hold or even suggest that the motivation of the legislature, in the sense of the social ill that Congress sought to address in the statute, is always irrelevant. In the presence of a statutory ambiguity, motivation (in that sense) may well serve as evidence of what the legislature provided for in the statute, *i.e.* legislative "intent." But where, as here, there is no ambiguity, motivation has no role in the construction of the statute. More to the point, even in discussing the legislative history, courts do so for the purpose of construing the language used, not to rewrite it.

**17.** The court needs to depart from its legal analysis to briefly observe something about our legal climate. I recognize that however appropriate my disposition of the instant motion is under my legal analysis above, it runs counter to a seriously held view that "tax protesters" are endangering our national commitment to the system of self-assessment and that a brake must be placed upon their conduct. This opinion should not be read as disputing that contention. Nonetheless, it is for Congress to determine how that problem is to be addressed. Courts can but enforce the law, and we do serious damage when we seek to fill in for Congress. If this case is reversed, so be it. I am satisfied that in deciding this case on the law and not ad hominem, I have done my duty and can do no more. I leave to courts higher in our hierarchy the correction of any error.