**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert NEFF, Defendant-Appellant.**

**No. 79–1286.**

United States Court of Appeals, Ninth Circuit.

Feb. 28, 1980.

Rehearing Denied April 16, 1980.

Amendment privilege against self-incrimination and that the admission of certain evidence was erroneous because it was hearsay and because it denied his Sixth Amendment right to confrontation. We reject his claims and affirm the conviction.

I

During 1974 and 1975, Neff was employed as a police officer and received wages from the City of San Jose, California. During 1974 he also received capital gains from dealings in gold and silver coins. His community property share of income from employment and investments exceeded $14,000 in 1974 and $8,500 in 1975. During each of these years, Neff, who had previously filed proper returns, submitted to the IRS a standard individual income tax return form (form 1040) on which Neff provided no financial information from which his tax liabilities could be calculated. As returned by Neff, the forms contained only essential identification information and Neff's signature. In response to more than 25 questions about his financial and tax status, Neff had printed the words "Object: Self-Incrimination." Remaining questions had been answered either "None" or "Unknown." Neff also appended to the forms, in each of these years, over 100 pages of general protest material challenging, among other things, the national monetary system, government spending, and federal reserve notes.

The Internal Revenue Service (IRS) responded by letter to Neff, explaining that the forms as he filled them out were not acceptable tax returns and providing additional blank forms for proper completion. Neff refused to comply, claiming that by doing so he would waive his Fifth Amendment privilege against self-incrimination. The government filed an information charging Neff with two counts of willful failure to file income tax returns, and a jury found him guilty of both counts.

Gary Joslin, Esq., Salt Lake City, Utah, for defendant-appellant.

Nancy Simpson, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before WALLACE and KENNEDY, Circuit Judges, and LARSON,* District Judge.

WALLACE, Circuit Judge:

Neff appeals his conviction pursuant to 26 U.S.C. § 7203 for willful failure to file income tax returns. He claims that prosecution for the crime violated his Fifth

* Honorable Earl R. Larson, United States District Judge, District of Minnesota, sitting by designation.

1238

We first consider Neff's claim of denial of the privilege against self-incrimination. We then examine the alleged hearsay evidence and denial of the right to confront adverse witnesses.

## II

■ By asserting his Fifth Amendment privilege at the time he filed the 1040 forms, Neff complied with the well-established rule that a self-incrimination objection to an income tax return must be raised at the time of filing. *Garner v. United States*, 424 U.S. 648, 665 & n.21, 96 S.Ct. 1178, 1187 & n.21, 47 L.Ed.2d 370 (1976); *United States v. Raborn*, 575 F.2d 688, 689 (9th Cir. 1978). After the jury was impaneled, and just before opening statements were to begin, Neff moved for a pretrial ruling on the validity of his Fifth Amendment claim. This motion was denied as untimely.[1] Neff complains that he never thereafter received a judicial ruling on the validity of his asserted privilege. We disagree. An examination of the record shows that the district judge repeatedly expressed his conviction that Neff had no valid self-incrimination claim. In his instructions to the jury, the judge stated that Neff's belief to the contrary was "erroneous as a matter of law." Our responsibility on review is to determine the propriety of that ruling.

■ The Supreme Court has stated that the privilege against self-incrimination, if validly exercised, is an absolute defense to a section 7203 prosecution for failure to file an income tax return. *Garner v. United States, supra*, 424 U.S. at 662–63, 96 S.Ct. at 1186–1187. The Court has also held, however, that the privilege does not justify an outright refusal to file any income tax return at all. *United States v. Sullivan*, 274

U.S. 259, 263, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). Furthermore, an objection may properly be raised only in response to specific questions asked in the return. *Id. See Garner v. United States*, 501 F.2d 228, 239 n.18 (9th Cir. 1974) (en banc), *aff'd Garner v. United States, supra*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370.

We are here faced with a case in which the taxpayer did assert his privilege in response to specific questions in the tax return form, but did so on such a wholesale basis as to deny the IRS any useful financial or tax information.[2] Other circuits, faced with similar wholesale assertions of the privilege against self-incrimination, have concluded that a tax return form which contains no information from which tax liability can be calculated does not constitute a tax return within the meaning of the IRS laws. Once these courts determine that the taxpayer has filed no return, simple application of the *Sullivan* precedent, which states that the Fifth Amendment will never justify a complete failure to file a return, invalidates the Fifth Amendment defense. *E. g., United States v. Irwin*, 561 F.2d 198, 201 (10th Cir. 1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978); *United States v. Silkman*, 543 F.2d 1218, 1219–20 (8th Cir. 1976) (per curiam), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977); *United States v. Daly*, 481 F.2d 28, 30 (8th Cir.) (per curiam), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973).

Although we recognize the ease with which the logic used in these cases would resolve the issue before us, we conclude that such reliance upon the definition of a tax return is inappropriate, because it lacks

1. Neff does not contest before us the propriety of that denial. Moreover, the Supreme Court has said that such a pretrial ruling on a Fifth Amendment refusal to provide tax information is not constitutionally required. *Garner v. United States*, 424 U.S. 648, 664–65, 96 S.Ct. 1178, 1187–1188, 47 L.Ed.2d 370 (1976).

2. In addition to refusing to disclose the total amount of his income, Neff even claimed the privilege in refusing to disclose his wife's social

security number and the names of his dependent children. Neither the Supreme Court nor this court has yet decided what specific tax return questions are so neutral (unlikely to incriminate) that the privilege could rarely, if ever, be asserted to justify a refusal to answer, *Garner v. United States, supra*, 424 U.S. at 650 n.3, 96 S.Ct. at 1180 n.3, and we do not find it necessary to make that determination in this case.

independent Fifth Amendment analysis. Moreover, the usefulness of this definitional approach is too limited because it is confined to facts such as those presented here: the wholesale assertion, albeit in response to specific questions, of the privilege against self-incrimination. In settings in which the Fifth Amendment right has been more discretely asserted, it would be difficult to conclude that no return has been filed, and, therefore, inappropriate to apply this definitional analysis.[3] We therefore choose not to follow the lead of the cited cases. We believe that the better approach to this and future Fifth Amendment tax return cases is to apply more traditional Fifth Amendment analysis.[4]

■ The requirement that citizens file a yearly income tax return does not, of itself, violate their privilege against self-incrimination. This conclusion is implicit in the Supreme Court ruling that taxpayers cannot rely upon the Fifth Amendment to justify a complete failure to file. *See Sullivan v. United States, supra,* 274 U.S. at 263, 47 S.Ct. at 607. Other statutory reporting requirements have been found to violate the privilege, but the reporting schemes in these cases were "directed at a highly selective group inherently suspect of criminal activities . . . in an area permeated with criminal statutes . . . ." *Albertson v. SACB,* 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965). Questions on income tax returns, in contrast, are "neutral on their face and directed at the public at large . . . ." *Id. See also California v. Byers,* 402 U.S. 424, 429, 91 S.Ct. 1535, 1538, 29 L.Ed.2d 9 (1971); *Marchetti v. United States,* 390 U.S. 39, 57, 88 S.Ct.

697, 707, 19 L.Ed.2d 889 (1968); *Grosso v. United States,* 390 U.S. 62, 64, 88 S.Ct. 709, 711, 19 L.Ed.2d 906 (1968). Therefore, in order for Neff to escape prosecution under section 7203, there must be something peculiarly incriminating about his circumstances that justifies his reliance on the Fifth Amendment. Before examining that circumstance, we will set forth pertinent Fifth Amendment principles.

■ To claim the privilege validly a defendant must be faced with " 'substantial hazards of self incrimination,' " *California v. Byers, supra,* 402 U.S. at 429, 90 S.Ct. at 1538, that are " 'real and appreciable' and not merely 'imaginary and unsubstantial.' " *Marchetti v. United States, supra,* 390 U.S. at 48, 88 S.Ct. at 702, *quoting in part Rogers v. United States,* 340 U.S. 367, 374–75, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951). Moreover, he must have "reasonable cause to apprehend [such] danger from a direct answer" to questions posed to him. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The information that would be revealed by direct answer need not be such as would itself support a criminal conviction, however, but must simply "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id. See also Hashagen v. United States,* 283 F.2d 345, 348 (9th Cir. 1960). Indeed, it is enough if the responses would merely "provide a lead or clue" to evidence having a tendency to incriminate. *Id.* at 348.

■ In determining whether such a real and appreciable danger of incrimination exists, a trial judge must examine the

---

3. Moreover, we are not certain that these circuit court decisions comport with Supreme Court precedent. The cases indicate that the taxpayer may never assert his privilege against self-incrimination in lieu of tax form responses essential to the calculation of tax liability. This rule, which limits the tax form questions to which a Fifth Amendment response is proper to those questions not essential to tax liability calculation, necessarily limits—perhaps too much—the scope of the Supreme Court's declaration in *Garner* that the Fifth Amendment may be asserted on a tax return. 424 U.S. at 662, 96 S.Ct. at 1186.

4. This is not to say that we reject the previous decision by this court that tax return forms devoid of financial information are not tax returns within the meaning of 26 U.S.C. § 7203. *United States v. Klee,* 494 F.2d 394, 397 (9th Cir. 1974). Such precedent has value in determining when section 7203 has been violated. We simply conclude that it does not have value as a means to determine the validity of Neff's assertion of the privilege against self-incrimination.

"implications of the question[s] in the setting in which [they are] asked . . . ." *Hoffman v. United States, supra,* 341 U.S. at 486, 71 S.Ct. at 818; *United States v. Pierce,* 561 F.2d 735, 741 (9th Cir. 1977), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978); *Hashagen v. United States, supra,* 283 F.2d at 350. He " '[m]ust be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' " *Hoffman v. United States, supra,* 341 U.S. at 487, 71 S.Ct. at 818, *quoting Ex parte Irvine,* 74 F. 954, 960 (C.C.Ohio, 1896); *United States v. Pierce, supra,* 561 F.2d at 741. If the trial judge decides from this examination of the questions, their setting, and the peculiarities of the case, that no threat of self-incrimination exists, it then becomes incumbent "upon the defendant to show that answers to [the questions] might criminate him." *United States v. Weisman,* 111 F.2d 260, 261 (2d Cir. 1940). *See also Garner v. United States, supra,* 424 U.S. at 658 n.11, 96 S.Ct. at 1184; *United States v. Daly, supra,* 481 F.2d at 30; *In re U. S. Hoffman Can Corp.,* 373 F.2d 622, 628 (3d Cir. 1967); *Hashagen v. United States, supra,* 283 F.2d at 350. This does not mean that the defendant must confess the crime he has sought to conceal by asserting the privilege. The law does not require him " 'to prove guilt to avoid admitting it.' " *Marchetti v. United States, supra,* 390 U.S. at 50, 88 S.Ct. at 754, *quoting United States v. Kahriger,* 345 U.S. 22, 34, 73 S.Ct. 510, 516, 97 L.Ed. 754 (1953) (Jackson, J., concurring). But neither does the law permit the defendant to be the final arbiter of his own assertion's validity. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to decide whether his silence is justified . . . ." *Hoffman v. United States, supra,* 341 U.S. at 486, 71 S.Ct. at 818. *See also Marchetti v. United States, supra,* 390 U.S. at 50, 88 S.Ct. at 703; *Albertson v. SACB, supra,* 382 U.S. at 79, 86 S.Ct. at 199; *United States v. Johnson,* 577 F.2d 1304, 1311 (5th Cir. 1978); *United States v. Daly, supra,* 481 F.2d at 30; *Hashagen v. United States, supra,* 283 F.2d at 348.

Thus, the defendant is placed in a delicate position, well described by Judge Learned Hand:

> Obviously a witness may not be compelled to do more than show that the answer is likely to be dangerous to him, else he will be forced to disclose those very facts which the privilege protects. Logically, indeed, he is boxed in a paradox, for he must prove the criminatory character of what it is his privilege to suppress just because it is criminatory. The only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it permits the suppression of competent evidence, nothing better is available.

*United States v. Weisman, supra,* 111 F.2d at 262.

■ Applying these principles to the facts before us, we conclude that the trial judge correctly decided that Neff had no valid Fifth Amendment defense to the section 7203 prosecution. The questions asked of Neff on the income tax form did not, of themselves, suggest that the response would be incriminating; nor did the setting in which they were asked—a general inquiry about Neff's financial and tax status, to be completed in the privacy of his own home—alter the non-incriminatory nature of those questions. Moreover, the peculiarities of the case did not strengthen Neff's claim. If anything, the tax protest nature of defense witness Holmes' testimony and of the materials that Neff appended to his returns suggest that Neff's refusal to complete the forms was motivated by a desire to protest taxes, rather than a fear of self-incrimination. In short, the whole circumstance was "innocuous and thus unprotected absent some positive disclosure by the witness of its hidden dangers . . . ." *Hashagen v. United States, supra,* 283 F.2d at 350. Neff made no such disclosure. At no point during the trial, including when Neff testified, was the district judge

presented with any indicia of potential incrimination.[5] On the contrary, Neff's counsel argued that Neff's sincerity of belief was sufficient to validate his assertion of the privilege, and that Neff alone should be the final arbiter of the assertion's validity.[6] As we have seen, that is not the law. Neff did not show that his response to the tax form questions would have been self-incriminating. He cannot, therefore, prevail on his Fifth Amendment claim.

### III

During trial, the government introduced into evidence an IRS Certificate of Assessments and Payments which stated that Neff had filed no proper tax returns during 1974 and 1975. Neff complains that such evidence was inadmissible hearsay and that its admission violated his Sixth Amendment confrontation right.

We have said:

Although the right of confrontation and the hearsay rule protect similar interests of a defendant, they do not have identical applications. Evidence may be admissible under an exception to the hearsay rule and still violate the Confrontation Clause. Or, it may not violate the Confrontation Clause, but still be inadmissible hearsay.

*United States v. Lee*, 589 F.2d 980, 987 (9th Cir. 1979). We will discuss the hearsay and Confrontation Clause issues separately.

### A.

■ Rule 27 of the Federal Rules of Criminal Procedure states that "[a]n official

---

**5.** That Neff never received a pre-trial evidentiary hearing on his Fifth Amendment claim does not mean that he was deprived of the opportunity to establish its validity. It is clear from the record that Neff's attorney attempted to validate the assertion of the privilege by questioning Neff about his reasons for asserting it and his sincerity in doing so. When the district judge instructed Neff's attorney that Neff could disclose as much or as little of the criminal conduct as he wished, the attorney asked Neff no questions about the underlying reason for his fear of incrimination.

**6.** Counsel for Neff stated in his closing argument:

record or an entry therein or the lack of such a record or entry may be proved in the same manner as in civil actions." Rule 803(10) of the Federal Rules of Evidence specifically permits the admission of negative records:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . . .

(10) Absence of public record or entry. To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

The document in question was admitted to prove the "nonoccurrence" of Neff's 1974 and 1975 tax returns, was "made and preserved" by the IRS, "a public office or agency," and was "evidence in the form of a certification in accordance with rule 902," specifically Rule 902(4) and (1). Neff contends that the prosecution failed to show that a "diligent search" had been made in connection with the production of the document as required by Rule 803(10), and that the document was, therefore, not admissible under that exception to the hearsay rule. The custodian of IRS records testified, how-

There's only one test that's important, whether or not Mr. Neff, in good faith, believed that he might be incriminated if he gave information . . . . If you find that his belief was erroneously held, but was held in good faith, then he had a right to use it, even if it's erroneous, as long as he's sincere. That has to be the test in this country, otherwise every man, when he asserted his right to privacy, would be subject to some other person's test for whether or not he was really a criminal. . . . He may raise the objection in the [tax] return and if he believed it in good faith, it was right. And that's the whole issue.

ever, that in producing the document he "researched the National Computer Center in Martinsberg, West Virginia, where all tax information is merged for every individual in the nation." Mere failure to include the word "diligent" is not sufficient to defeat the applicability of Rule 803(10). *United States v. Lee, supra*, 589 F.2d at 987 n.7. *Accord, United States v. Farris*, 517 F.2d 226, 228 (7th Cir.), *cert. denied*, 423 U.S. 892, 96 S.Ct. 189, 46 L.Ed.2d 123 (1975); *United States v. Dota*, 482 F.2d 1005, 1007 (10th Cir.), *cert. denied*, 414 U.S. 1071, 94 S.Ct. 583, 38 L.Ed.2d 477 (1973). We hold that the IRS Certificate of Assessment and Payments was admissible under the Rule 803(10) exception to the hearsay rule.

### B.

 In order to rule that Neff's Sixth Amendment right to confront adverse witnesses was not violated by admission of the IRS document we must be convinced that the document was reliable, for "the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' " *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970), *quoting California v. Green*, 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970). In examining the document and the circumstances under which it was admitted into evidence, we find sufficient "indicia of reliability," *Dutton v. Evans, supra*, 400 U.S. at 89, 91 S.Ct. at 220, to convince us that it was not error to place the document before the jury.

> The primary object of the [Confrontation Clause] was to prevent depositions or *ex parte* affidavits . . . being used against the prisoner in lieu of a personal

examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). The document in question here was the product of systematized data storage and retrieval by a public agency charged with the responsibility of maintaining accurate financial and tax information. Its admission into evidence involved no risk of faulty human recollection and little likelihood of misrepresentation of significant data. Clearly, the public record indicating that Neff failed to file proper tax returns in 1974 and 1975 was not the inherently unreliable out-of-court statement at which the Confrontation Clause was directed. "The rationale which underlies all of the public document exceptions to the hearsay rules is that statements made by public officials in the discharge of their duties are generally trustworthy." *United States v. Lee, supra*, 589 F.2d at 988.

We, along with a clear majority of those courts which have weighed the admission of negative public records against a Sixth Amendment challenge, have concluded that admitting such documents does not violate the defendant's right to confrontation. *United States v. Lee, supra*, 589 F.2d at 988–89. *E. g., United States v. Downing*, 454 F.2d 373, 376 (10th Cir. 1972); *Warren v. United States*, 447 F.2d 259, 262 (9th Cir. 1971); *United States v. Mix*, 446 F.2d 615, 622–23 (5th Cir. 1971); *United States v. Thompson*, 420 F.2d 536, 545 (3d Cir. 1970).[7]

---

7. Neff urges us to rely upon *United States v. Oates*, 560 F.2d 45 (2d Cir. 1977), and thus hold that admission of the IRS document violated his right to confrontation and was inadmissible hearsay because it was a public report offered by the government in a criminal trial contrary to the implication of Federal Rule of Evidence 803(8). We decline to do so. The IRS docu-

ment offered into evidence against Neff is distinguishable from the "evaluative reports" considered in *Oates. Id.* at 67 n.19, 68, 69. There, the evidentiary report chronicled the chemical analysis of a substance, eventually identified in the report as heroin. The chemist who performed the analysis was not present at trial to testify about the chemical procedures used in

Moreover, the nonexistence of Neff's 1974 and 1975 tax returns was well established by other evidence at trial. The actual 1040 Income Tax Return Forms which Neff completed and filed were introduced into evidence. Those returns, which contained no information from which tax liability could be calculated, themselves demonstrated that Neff filed no proper tax returns during 1974 and 1975 " 'within the meaning of the Internal Revenue Code or the regulations adopted by the Commissioner.' " *United States v. Klee*, 494 F.2d 394, 397 (9th Cir.), *cert. denied*, 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974),[8] *quoting United States v. Porth*, 426 F.2d 519, 523 (10th Cir.), *cert. denied*, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970).

We conclude that Neff has no valid hearsay evidence or Confrontation Clause challenge to his conviction.

AFFIRMED.

making the identification, or about the reasons for his conclusion that the substance was heroin. Other examples of "evaluative reports" referred to in the opinion are psychiatric and psychological examinations, and documents reporting the testing of grain. *Id.* at 67 n.19. It appears to us self-evident that the national records of IRS receipts reported by a custodian of those records are inherently less needful of probing cross-examination than are conclusions reached through scientific examination by an out-of-court analyst.

8. See note 4, *supra*.