CRAIG M. DETWILER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Detwiler v. Commissioner
Docket No. 20442-81.
United States Tax Court
T.C. Memo 1983-219; 1983 Tax Ct. Memo LEXIS 563; 45 T.C.M. (CCH) 1371; T.C.M. (RIA) 83219; April 25, 1983; As Amended May 3, 1983 Craig M. Detwiler, pro se. George W. Connelly, Jr., for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: After concessions, the issue to be decided in this case is whether respondent appropriately determined additions to tax under section 6653(b) [1] for fraud in the *564 context of petitioner's "protest" filings of Forms 1040; purported reliance on the Fifth Amendment privilege against self-incrimination; and submissions of false W-4 forms to his employer. FINDINGS OF FACT Certain of the facts have been stipulated. The Stipulation For Trial and Supplemental Stipulation For Trial are incorporated herein by reference. [2]
*565 Respondent determined deficiencies and additions to tax for the years 1979 and 1980 as follows: Year
Deficiency in
Additions to Tax
Ended
Income Tax
Sec. 6653(b)
Sec. 6654
1979
$13,930.91
$6,965.45
$582.73
1980
$13,596.58
$6,798.29
$853.79
At the time he filed his petition herein, petitioner was a resident of Brockport, New York. From prior to 1974 through the time of trial, petitioner was employed as an engineer by the Rochester Products Division of General Motors Corp. in Rochester, New York. At all times relevant to this case petitioner was married. He and his wife filed timely joint Federal income tax returns for each of the taxable years 1974, 1975, 1976, 1977, and 1978. They did not file joint income tax returns for the taxable years 1979 and 1980, and petitioner's wife is not a party to this case. During the years 1979 and 1980, petitioner and his wife were the parents of three children. Petitioner's wife and children were his only dependents during 1979 and 1980. On or about November 21, 1978, petitioner filed a Form W-4, Employee's Withholding Allowance Certificate, with his employer. On that form he claimed 49 withholding *566 allowances. The form contained the statement "Under the penalties of perjury, I certify that the number of withholding exemptions and allowances claimed on this certificate does not exceed the number to which I am entitled." Petitioner's claimed itemized deductions on his 1978 tax return totalled $13,697. There was no reasonable basis for his claim of 49 withholding allowances. On or about January 14, 1981, petitioner filed with his employer a superseding Form W-4, which claimed exemption from withholding and stated in part "If claiming exemption from withholding, I certify that I incurred no liability for Federal income tax for last year and I anticipate that I will incur no liability for Federal income tax for this year." Petitioner's compensation from his employer totaled $35,589.62 in 1979 and $37,958.48 in 1980. Shortly after the close of each of the taxable years 1979 and 1980, petitioner's employer furnished him with Forms W-2, Wage and Tax Statements, showing that compensation. No Federal income tax was withheld by petitioner's employer for either of the years in issue. Petitioner made no payment of estimated tax for either year, and no exception to the requirements for *567 such payment applies to him. On or about April 8, 1980, petitioner mailed a document with various attachments to the Internal Revenue Service Center at Andover, Massachusetts. That document was a modified Form 1040, U.S. Individual Income Tax Return, for 1979. On the lines provided on the form for information as to income and other information necessary for computation of tax due, asterisks were inserted. In all four margins of the form were preprinted statements concerning "FILED UNDER PROTEST;" "PETITION FOR REDRESS OF GRIEVANCES;" confusion as to the meaning of "dollars," etc.; desire not to waive constitutional rights; and request for immunity. By letter dated May 16, 1980, respondent notified petitioner that the form filed by him was not acceptable as an income tax return. By letter dated December 2, 1980, referring to respondent's letter of May 16, 1980, petitioner requested respondent to return the form previously filed and enclosed "a new tax return dated 12/2/80, for the calendar year 1979 which is to supersede my return dated 4/8/80." On the lines provided on the new form for information as to income and other information necessary for computation of tax due, petitioner *568 inserted "object" or "none." In the top margin of the form was a statement that "The attached fourteen page memorandum is to be considered a part of this return. The word 'object' in response to a specific question means on grounds of self-incrimination." The attachments to the form included various material on the Fifth Amendment, "Big Brotherism," materials involving other taxpayers, and an excerpt from a book on tax fraud. On March 15, 1981, replying to a notice from respondent that respondent had no record of petitioner's tax return for 1979, petitioner wrote a letter to respondent referring to his December 1980 filing, insisting that he was claiming his privilege against self-incrimination in good faith, and offering to provide financial information if he were granted immunity. On or about April 13, 1981, petitioner mailed a document with attachments to the Internal Revenue Service Center at Andover, Massachusetts. That document was a modified Form 1040 for 1980, which document was substantially the same as the document submitted on December 2, 1980. On or about April 13, 1982, petitioner submitted a similar form with respect to the year 1981. OPINION This case seems *569 to be an excellent example of how a taxpayer's attempt to "draw a conjurer's circle around" the matter of his tax liability [3] has become a tangled web [4] ensnaring the taxpayer. While at trial and in his brief petitioner pleads the lack of fraudulent intent necessary to imposition of the addition to tax for fraud under section 6653(b), neither the facts nor the law support his position. Respondent, of course, has the burden of proof with respect to this issue of fact, and such proof must be by clear and convincing evidence. Section 7754(a); Rule 142(b), Tax Court Rules of Practice and Procedure.
There is no doubt that petitioner was a person required to file returns, section 6012(a), and his filings for prior years evidence his knowledge of his obligation to file returns and the manner in which such returns should be completed. The lack of validity to the manner in which petitioner purported to rely on the Fifth Amendment is apparent from the cases cited in the materials attached to his filings and quoted at length *570 in his brief, [5] and he could not reasonably have believed that those authorities justified his blanket failure to supply information. The tax protest nature of the materials printed on and attached to his original filing for 1979 and attached to the subsequent filings for 1979, 1980, and 1981, tends to establish that petitioner's refusal to supply information was motivated by a desire to protest taxes rather than a fear of self-incrimination. See United States v. Neff,615 F.2d 1235 (9th Cir. 1980); Rechtzigel v. Commissioner,79 T.C. 132, 138-139 (1982), affd. per curiam     F.2d     (8th Cir. 1983). *571 We do not need to decide whether a patently spurious claim of reliance on the Fifth Amendment, standing alone, would establish fraud. There is other compelling evidence in this case, i.e., the false withholding certificates supplied to petitioner's employer with the purpose and effect of preventing withholding from his wage income, that establishes fraud. If petitioner's Fifth Amendment concerns were genuine and not intended to evade payment of his taxes, his privilege would not have been impacted by payment of taxes on his lawful wage income through withholding by his employer. It is difficult to imagine how withholding alone would incriminate petitioner, and, even if taxes withheld from his wages were potential evidence regarding some crime, this evidence was not compelled from petitioner but from his employer. [6] Petitioner's filing of the first false W-4 certificate with his employer resulted in an underpayment of tax for the years in issue. He has offered no excuse for that conduct, and it is essentially inexcusable. See section 7205. Compare United States v. Quilty,541 F.2d 172 (7th Cir. 1976); United States v Malinowski,472 F.2d 850 (3d Cir. 1973); *572 Stephenson v. Commissioner,79 T.C. 995, 1007 (1982); Habersham-Bey v. Commissioner,78 T.C. 304, 313-314 (1982). Under these circumstances, respondent has presented clear and convincing evidence of fraud, and the additions to tax must be sustained. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. As a result of stipulation, based upon substantiation submitted by petitioner to respondent at the close of trial, petitioner will be allowed various itemized deductions not allowed in the notice of deficiency. The only unagreed items of claimed deductions remaining after the stipulations are a $200 payment by petitioner in 1979 to Liberty Lobby and $60 claimed by petitioner as the value of his services donated that year to a charitable organization. Petitioner has presented neither evidence nor legal authority supporting his entitlement to such deductions or with respect to the mandatory additions to tax under sec. 6654, and we conclude that he has justifiably abandoned any contest on those items.↩
3. United States v. Sullivan,274 U.S. 259↩ (1927). 4. Sir Walter Scott: Q, what a tangled web we weave, when first we practice to deceive.↩
5. E.g., United States v. Neff,615 F.2d 1235 (9th Cir. 1980). Petitioner's brief states in part: Not every attempt to claim the right against self-incrimination on a tax return constitutes a valid exercise of the privilege, as some taxpayers have learned, to their sad disappointment.If you will read the citations carefully, which have been cited above, you will notice that the Court said, "if validly exercised," and that a "conviction cannot be based on a Valid Exercise Of The Privilege." When a taxpayer claims the right against self-incrimination on a tax return as a protest against income tax per se, government spending and the Federal Reserve banking system; when he claims the privilege because he doesn't want to support socialism, communism, foreign aid, welfare, etc., and because he wants to protect himself from, in his view, a "criminal government," he is making a bad faith and invalid claim of the right against self-incrimination. He is suggesting that he is claiming the privilege, NOT because he honestly fears his answers could tend to incriminate him, but as a protest against the tax itself, the Federal Reserve System, and Government spending. I believe that no case sets forth the points of law more clearly than the Neff case, cited above, wherein the Court said: "To claim the privilege validly a defendant must be faced with '"substantial hazards of self incrimination"… that are '"real and appreciable" and not merely "imaginary and unsubstantial."'" See also United States v Johnson,577 F.2d 1304, 1310-1311 (5th Cir. 1979). United States v. Daly,491 F.2d 28 (8th Cir. 1973); Heligman v. United States,407 F.2d 448, 450 (8th Cir. 1969); United States v. Porth,426 F.2d 519↩ (10th Cir. 1970).
6. The Fifth Amendment forbids personal compulsion of the party seeking to assert it; "it necessarily does not proscribe incriminating statements elicited from another." Couch v. United States,409 U.S. 322, 328 (1973); see also Fisher v. United States,425 U.S. 391, 397↩ (1976).