For the reasons stated herein, the Court will grant the plaintiff's motion for a preliminary injunction.

**UNITED STATES of America, Plaintiff,**

**v.**

**Dale H. MALQUIST, Defendant.**

**Crim. No. 85–17–H–CCL.**

United States District Court,
D. Montana,
Helena Division.

Oct. 11, 1985.

---

F. Woodside Wright, Helena, Mont., for defendant.

Barry D. Rhoads, Robert L. Miskell, Sp. Attys. Dept. of Justice, Washington, D.C., for plaintiff.

## MEMORANDUM

LOVELL, District Judge.

This memorandum further explains the basis for the Court's order of September 11, 1985 denying defendant's application for bail pending appeal. For the reasons set forth below, I find: (1) defendant failed to establish by clear and convincing evidence that he is not likely to flee or present a danger to any person or the community; and (2) defendant's appeal does not present a substantial question of fact or law likely

to result in reversal of his conviction or in an order for a new trial.

## BACKGROUND

Defendant, an avid student of tax protest, was charged with, and by the jury found guilty of, six counts of failure to file federal income tax returns, 26 U.S.C. § 7203. For the six years in issue (1978–1983 inclusive) defendant actually filed "return" forms refusing to disclose any financial information and containing multiple declarations of fifth amendment privilege. On one "return" he listed his middle name as "Object." He also attached to each return dozens of pages of extraneous materials criticizing United States foreign policy, our monetary system and otherwise expressing dissatisfaction with our government.

The United States proved that Defendant received approximately $168,000 of gross income during these six years in which he refused (and still refuses) to file valid tax returns. Also, Defendant filed W–4 forms, sometimes claiming dozens of dependents, so that his employers would not withhold tax from his wages. The result is that the United States got no tax from the $168,000 of income which Defendant received.

Defendant subscribed to the publications and views of the Golden Mean Society, a tax protest group located in Montana. He mistakenly believes that the fifth amendment protects him from having to disclose any financial information requested on a standard individual tax return form. He also supports his fifth amendment claim with the commonly expressed tax protester fear that he will be prosecuted for a good faith mistake if he does fill out the return, and he has attached materials to some of the filings supposedly supporting this contention. Defendant has also conveyed away his property in trust for his two daughters, apparently attempting to avoid collection of tax by the government. Interestingly, Defendant's wife has filed valid returns for each of the six years for which Defendant has refused to file.

Notwithstanding the $168,000 in income received by Defendant and his conveyance to the trust, Defendant petitioned the court for appointment of counsel, claiming to be a pauper. The court appointed counsel for Defendant at government expense.

On the trial, Defendant attempted one additional defense. He claimed (in addition to the general claim of privilege) that an IRS agent had "read him his rights" in 1977 in connection with a criminal investigation of the improper W–4 forms, and that this also justified him in invoking the fifth amendment during each of the following six tax years. Apparently he claims that this contact frees him from any obligation he might otherwise have to file income tax returns—and to pay tax in connection therewith.

Defendant was sentenced to one year on each of the six counts with the terms on the first four counts to run consecutively.

After sentence was imposed, Defendant moved for bail pending appeal pursuant to 18 U.S.C. § 3143. I denied this motion and in the order indicated that this explanatory opinion would follow.

## DISCUSSION

*A. Introduction.*

 This analysis begins with the applicable statute, 18 U.S.C. § 3143(b), which recently was amended as part of the Bail Reform Act of 1984. Pub.L. No. 98–473, §§ 202–210, 98 Stat. 1837, 1976–87 (codified in various sections of 18 U.S.C.). The statute provides in part:

### RELEASE OR DETENTION PENDING APPEAL BY THE DEFENDANT.

The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for certiorari, be detained, unless the judicial officer finds—

(1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other

878

person or the community if released pursuant to Section 3142(b) or (c); and

(2) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial. 18 U.S.C. § 3143(b). Section 3143(b) was enacted to check the trend toward "liberalization" of the standard for allowing bail pending appeal. The legislative history indicates that the statute, in essence, creates a presumption against post-conviction release. The Senate Report states in part:

It has been held that although the denial of bail after conviction is frequently justified, the current statute (the Bail Reform Act of 1966) incorporates a presumption in favor of bail even after conviction. It is this presumption that the Committee wishes to eliminate in Section 3143....

Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal....

The Committee intends that in overcoming the presumption in favor of detention (created by the Bail Reform Act of 1984) the burden of proof rests with the defendant.

S.Rep. No. 225, 98th Cong., 2d Sess. 26–27, *reprinted in,* 1984 U.S.Code Cong. & Admin.News 3182, 3209, 3210 (citations omitted). As the legislative history indicates, Congress recognizes the basic principle that a conviction is presumed to be correct. Thus, release of a defendant pending appeal may be granted only if the court finds that the defendant is not likely to flee or pose a danger to the community, and that defendant raises substantial questions likely to result in reversal.

*B. Likelihood of Flight/Danger to the Community.*

Section 3143(b)(1) requires the judicial officer to detain a defendant pending appeal unless the defendant proves "by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any person or the community" if released. This is the same standard as is set forth in

Section 3143(a) for release of a defendant pending imposition of sentence. The Court ordered Malquist released pending sentencing pursuant to 18 U.S.C. § 3143(a) on July 26, 1985. While the Court had considerable reservations about releasing Malquist at that time, I believed presentence release to be in the best interests of defendant and justice. I afforded Malquist an opportunity to put his personal affairs in order.

■ Defendant's situation has changed since sentence was imposed on August 27, 1985. Malquist now faces a substantial prison term. He also refuses to accept the fact that he has violated the law. Malquist continues to adhere to his belief that he is not, and was not, obligated to file federal income tax returns reporting his financial and tax status to the government. The Court determines, therefore, that defendant has not carried his burden of proving by clear and convincing evidence that he is not likely to flee. The determination is based upon the testimony during the *in camera* hearing held prior to trial, the evidence adduced at trial, the Court's discussions with defendant at sentencing and at the hearing on the motion for bail pending appeal, and the Court's observations during all of these proceedings.

The record reveals defendant presently is unemployed. His past work history is sporadic and shows him to be transient. As a skilled electrician, defendant is not tied to this area or this country but could find employment anywhere. Malquist's employment status weighs against post-conviction release.

The nature of the offenses with which defendant was convicted also weighs against his release. He was convicted of six counts of willfully failing to file tax returns. Despite the non-violent nature of these offenses, the Court finds defendant willfully rejected a known legal duty. The militant lack of responsibility evident in such conduct appears to make defendant a serious flight risk.

The evidence against defendant in this case was substantial, and militates against

release on bail pending appeal. Defendant's financial status, too, weighs against release. Malquist has purposefully divested himself of his assets, establishing a trust for his children, in an apparent attempt to evade taxation. Financially, defendant would have nothing to lose by fleeing the jurisdiction. Given his skills as an electrician and his ability to earn a significant income, Malquist's present dearth of liquid assets would not hinder attempted flight.

Defense counsel urges the Court to consider the fact that defendant has appeared before the Court whenever ordered to do so. Although this weighs in Malquist's favor, I note that, prior to trial, Defendant apparently had a belief that he would prevail at trial. Even after conviction, defendant could hope for probation. Now, Malquist faces a maximum four-year sentence, subject only to his possible success on this appeal.

The Court finds that defendant's family ties weigh in his favor. Malquist's wife and children appear supportive, and flight could only work to damage that relationship. Still, these family ties did not prevent Malquist from violating the law in the first instance. After weighing the relevant factors, I conclude that defendant has failed to present clear and convincing evidence that he is unlikely to flee. The Court is further convinced that no restriction short of post-conviction detention is reasonably certain to secure defendant's appearance upon resolution of the appeal.

At the hearing on defendant's motion for bail pending appeal, Malquist presented no substantive evidence on the "dangerousness" issue. I have no specific reason to believe Defendant is dangerous, but Malquist has failed to demonstrate by clear and convincing evidence that he does not pose a threat to the safety of the community.

*C. Substantial Question of Fact or Law.*

Even if the Court were to conclude that defendant does not pose a flight risk or a danger to the community, the analysis un-der 18 U.S.C. § 3143(b) would not be complete. I still must address the issue of whether defendant's appeal "raises a substantial question of law or fact likely to result in reversal or an order for a new trial." 18 U.S.C. § 3143(b)(2). The Ninth Circuit interprets the word "substantial" in the statute quoted above as defining the level of merit required in the question raised on appeal and the phrase "likely to result in reversal or an order for a new trial" as defining the type of question that must be raised. *United States v. Handy,* 761 F.2d 1279, 1280–81 (9th Cir.1985). *Accord, United States v. Miller,* 753 F.2d 19 (3rd Cir.1985); *United States v. Giancola,* 754 F.2d 898 (11th Cir.1985).

■ In order to secure his release on bail, defendant need not demonstrate at the outset of appellate proceedings that his appeal probably will result in reversal. That would be tantamount to requiring the trial court to certify that it believes itself to be in error. (In that circumstance I would grant a new trial.) Congress certainly did not intend to limit bail pending appeal to cases in which the district court rules that reversal is more likely than not. The legislative history states that the purpose of the statute is to require "an affirmative finding that the chance for reversal is substantial." S.Rep. No. 98–225, 98th Cong., 2d Sess. 27, *reprinted in,* 1984 U.S.Code Cong. & Admin.News 3182, 3210.

■ There is Ninth Circuit authority on the issue of how much merit there must be to a question in order for a court to find it to be a "substantial question." Historically, the phrase "substantial question" has referred to issues that are "fairly debatable." Included within this definition have been questions that are novel and questions that are not readily answerable. In short, a substantial question is one of more substance than would be necessary to a finding that it was not frivolous. *See,* for example, *Handy,* 761 F.2d at 1281–83; *Gardner v. Pogue,* 558 F.2d 548 (9th Cir. 1977); *Barefoot v. Estelle,* 463 U.S. 880,

103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). I cannot make such a finding here.

■ The court has reviewed defendant's grounds for appeal and finds that these questions are not substantial. From the outset of this case, defendant claimed that he validly exercised his fifth amendment rights in submitting what he claims to be tax returns for the years 1978 through 1983.

■ If validly exercised, the fifth amendment privilege against self-incrimination is an absolute defense to a prosecution for failure to file income tax returns. *Garner v. United States*, 424 U.S. 648, 662–63, 96 S.Ct. 1178, 1186–87, 47 L.Ed.2d 370 (1976). That privilege, however, does not justify an outright refusal to file any tax return at all nor is it a license to cease filing forever. *United States v. Sullivan*, 274 U.S. 259, 263, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). Rather, a proper fifth amendment objection is made only in response to specific questions asked on the return form. *Id.*

■ The record reveals Malquist asserted a fifth amendment privilege on documents that he submitted to the Internal Revenue Service for the tax years in question. He did so on such a wholesale basis, however, as to deny the government any meaningful financial or tax information. Tax return forms devoid of financial information do not constitute "tax returns" within the meaning of 26 U.S.C. § 7203. *United States v. Klee*, 494 F.2d 394, 397 (9th Cir.1974). Thus, the court concluded that the protest documents filed by Malquist for the years 1978 through 1983, containing no information from which tax liability could be computed, were not tax returns. The court instructed the jury, in part, that the forms submitted by Malquist did not satisfy the filing requirement of 26 U.S.C. § 7203. This issue is not "fairly debatable." The Courts of Appeals unanimously adhere to the principle that forms devoid of any financial information are not "tax returns" within the meaning of the statute.

The Court also instructed the jury that, as a matter of law, defendant did not validly exercise his fifth amendment rights on the purported returns for 1978–1983. Under the rule set forth in *United States v. Neff*, 615 F.2d 1235 (9th Cir.1980), the determination that the forms submitted by Malquist were not tax returns did not render invalid his exercise of the privilege against self-incrimination. The rule of *Neff* requires the court to make an independent fifth amendment analysis of defendant's claims.

For Malquist's assertion of the fifth amendment privilege to have been valid, he must have faced "substantial hazards of self-incrimination" that were "real and appreciable" and not merely "imaginary and unsubstantial." *Neff*, 615 F.2d at 1239 (citations omitted). Moreover, Malquist must have had "reasonable cause to apprehend (such) danger from a direct answer" to the questions posed to him. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

In response to defendant's motion to dismiss the indictment on the ground that the validly exercised his fifth amendment privilege, the Court conducted a pretrial *in camera* hearing on the issue. Even though *Neff* does not require such a hearing on a defendant's fifth amendment claim, the Court wanted to afford Malquist and his counsel the opportunity, on the record, for full explanation. After this pretrial hearing, the Court determined defendant's fifth amendment claim was not valid.

■ Implicit in the Supreme Court's ruling that taxpayers cannot rely on the fifth amendment to justify a complete failure to file, is the proposition that the statutory filing requirement does not, in and of itself, violate the privilege against self-incrimination. The inquires on a tax return form are "neutral on their face and directed at the public at large...." *Albertson v. SACB*, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965). For Malquist's claim to have been valid, he had to demonstrate something peculiarly incriminating about his circumstances to justify his failure to

comply with a known legal duty. He did not do so—in general or in connection with the IRS contact.

If anything, the tax protest nature of the materials Malquist appended to his purported returns suggests that his refusal to comply with the tax laws was motivated solely by his selfish desire to avoid taxation. These appended materials include an extensive criticism of the federal monetary system and federal expenditures. Neither the Internal Revenue Service nor this Court have been presented with any indicia of potentially incriminating questions on the return forms. Rather, defendant's failure to file complete returns stems from his displeasure with federal policy. Defendant's disagreement with federal policy does not justify violation of the law.

An exchange between Malquist and the Court during the pretrial hearing supports the finding that defendant did not genuinely fear self-incrimination:

Court: [T]he purpose of the proceeding today is to grant your request to examine the returns and allow you in camera to explain your having invoked the fifth amendment privilege against self-incrimination. Do you understand that fully?

Malquist: Partially.

Court: What is it that you don't understand?

Malquist: The way you quoted the fifth amendment privilege.

Court: What is it about that that you don't understand?

Malquist: *That I don't necessarily feel I may have had to have done something that might incriminate me to invoke the Fifth Amendment. I just thought it said that I don't have to be compelled to be a witness.* (emphasis supplied).

■ Additionally, defendant has indicated that his fear of self-incrimination, if any, stemmed from a 1977 contact between himself and two agents of the Internal Revenue Service's Criminal Investigation Bureau. Malquist's position is inconsistent with his filing of valid tax return materials, shortly after such contact, requesting a refund for tax years prior to those in question herein. It would appear that Malquist's fear of self-incrimination is present only in years in which he incurs a tax liability. Based upon the defendant's testimony, the evidence presented at trial and the Court's own observations, Malquist's reliance on this single contact with the IRS appears as much an afterthought as anything else. In any event, this episode did not justify a valid invocation of the fifth amendment.

■ The Court's rulings that the documents submitted by defendant were not "tax returns" and that defendant did not validly exercise his fifth amendment rights did not, of course, necessitate a finding of guilt by the jury. The jury was further instructed that a failure to file must be a willful failure to comply with a known legal duty in order to constitute an offense. The evidence against defendant was substantial and fully supports the verdict.

Finally, I cannot help but note that this defendant has enjoyed the benefit of living in the freest society in the history of civilization. Still, he is unwilling to pay his fair share (or anything) toward its maintenance. If everyone acted as Defendant has, our country would fall. He came into these proceedings with the belief that he is entitled to read and invoke the Constitution as he sees fit without regard to the decisions of this country's courts. He maintained that posture throughout this case: from the pretrial hearing on his Fifth Amendment claim through the post-conviction hearing on the motion for bail pending appeal. During sentencing, I attempted to determine whether Defendant would recant, and would agree to obey the law. He stubbornly refused and insisted that he could read and understand the Constitution without aid or benefit of the courts:

Court: You still believe that you have the right to refuse to set forth, on a tax return, the amount of your income and the deductions or exemptions that you claim and other financial information that the tax return calls for?

882

Malquist: While I'm under a criminal investigation, you bet I believe I have the right; and I was never told that I wasn't under the investigation until the second day of this trial.

Court: Your testimony, in the *in camera* hearing, was that that type of information wasn't any of the government's business. And isn't that what this group that you've been reading their literature, isn't that what they instruct?

Malquist: They haven't instructed me.

Court: You've read their literature?

Malquist: I've read a lot of literature, not only from them. I've sat in law libraries and read law books, too.

Court: Isn't that what the literature indicates?

Malquist: No, it indicates that you have the right to live by the Constitution of this country, which is supposed to be the supreme law of the land.

Court: And your own interpretation of that Constitution, as opposed to that which the courts have decided; is that right?

Malquist: Yeah, I think that's right because, you know, I can read.

The questions raised on appeal by defendant are not "fairly debatable." The law on these issues is clear. I cannot identify any case law authority indicating that defendant's thesis has found support in the other federal courts. Defendant has not presented any "substantial question of law or fact." Also, I cannot believe this appeal "would likely result in reversal." Defendant has not overcome the statutory presumption in favor of detention pending appeal.