WILLIAM P. SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket Nos. 1759-82, 22930-84.
United States Tax Court
T.C. Memo 1986-254; 1986 Tax Ct. Memo LEXIS 358; 51 T.C.M. (CCH) 1253; T.C.M. (RIA) 86254; June 19, 1986. William P. Smith, pro se. Patrick E. McGinnis and Dorothy W. Westover, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: In statutory notices of deficiency, respondent determined deficiencies *359 in and additions to petitioner's Federal income tax as follows: Docket
Additions to Tax
No.
Year
Deficiency
I.R.C. Sec. 6653(b) [1]
Sec. 6654
1759-82
1971
$8,808.97
$4,404.49
$157.13
1972
25,677.38
12,838.69
818.45
22930-84
1975
13,928.00
6,964.00
602.00
1976
20,389.00
10,194.00
689.00
1977
21,364.00
10,682.00
760.00
1978
31,933.00
15,966.00
1,019.00
In his answer in Docket No. 22930-84, respondent alleged increased deficiences for years 1975 through 1978 in the amounts of $16,801, $23,418, $24,402 and $35,086, respectively, and corresponding increases in additions to tax under section 6653(b) and section 6654. In these consolidated cases, after concessions by petitioner, the issues for decision are: (1) whether petitioner received unreported currency income in the amounts determined by respondent; (2) whether petitioner is liable for the additions to tax under section 6653(b) for fraud; and (3) whether petitioner is *360 liable for the additions to tax under section 6654. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner, William P. Smith, resided in California when he filed the petitions herein. During the years 1971 through 1978, petitioner was a Doctor of Dental Surgery with a private practice located in Fullerton, California. During this time petitioner was married to Ruthe A. Smith under the laws of California. Mrs. Smith was the office manager and bookkeeper for petitioner's dental practice from 1971 through 1977. Vicky Teague then became the bookkeeper. Petitioner received payment from his patients in the form of check or cash currency. Most of the checks were deposited in the bank and were duly recorded on a journal captioned "record of cash received" (hereinafter referred to as the cash receipts journal). Occasionally petitioner would endorse a check and receive currency. Payments in currency were not recorded in the cash receipts journal but were recorded on each patient's chart. During 1971 and 1972 petitioner received approximately $100 a day *361 in undeposited currency. Beginning 1964 petitioner engaged Richard Wilbur as his accountant. Wilbur prepared petitioner's 1969 and 1970 Federal income tax returns. Wilbur also prepared a general ledger for petitioner's dental practice for the years 1971 and 1972. The cash receipts journal was the basis for the entries made on the general ledger for the income received. Wilbur was not aware that the cash receipts journal did not reflect the currency received in petitioner's practice. Early in 1972, petitioner advised Wilbur that he did not intend to file a tax return for 1971. Petitioner invited Wilbur to attend a meeting of tax protestors. After the meeting, petitioner and Wilbur agreed that Wilbur would no longer do petitioner's accounting. Wilbur prepared the general ledger through November 1972. Petitioner prepared a Form 1040 for the year 1971 utilizing the records prepared by Wilbur. In July 1972, petitioner submitted this Form 1040 to Crocker National Bank to verify his application for a professional loan. Petitioner indicated on this form that his adjusted gross income was $48,373.However, petitioner never submitted this form to the Internal Revenue Service. *362 Instead, petitioner submitted to the Internal Revenue Service a Form 1040, dated April 10, 1972, and received on May 8, 1972, which purported to be a Federal income tax return for the year 1971 but was blank on the lines requesting information as to income and tax liability. The words, "[u]nder penalties of perjury" were deleted and the form contained a notation, "Objections to Form of Return," reciting invasion of privacy under the Fourth Amendment, possible self-incrimination under the Fifth Amendment and that petitioner had received no income in valid constitutionally legal dollars redeemable in gold and silver. A letter was sent to petitioner dated September 14, 1972, advising petitioner that the form submitted was not an acceptable return and cited the case of United States v. Porth,426 F.2d 519 (10th Cir. 1970). Petitioner and his wife submitted a Form 1040, dated April 16, 1973, which purported to be a Federal income tax return for the year 1972 but again contained blank lines as to income and tax liability and noted the same objection. Again the Internal Revenue Service sent a letter, dated July 2, 1973, to petitioner and his wife advising that the *363 submitted form was not a return. In January 1973, Wilbur received a summons from special agents of the Internal Revenue Service for petitioner's records. Wilbur, after speaking with his attorney about a possible defect in the summons, called petitioner who then came to Wilbur's office and removed his records. In September 1973, petitioner was contacted by a special agent. Petitioner was uncooperative in answering the agent's questions. On November 13, 1973, petitioner telephoned the special agent and asked for the forms necessary to file an amended return. On March 19, 1974, the Fresno Service Center received Forms 1040X, dated March 14, 1974, and signed by petitioner and his wife, purporting to be amended tax returns for the years 1971 and 1972, but again contained no information on income or tax liability. Attached to the forms were pages of frivolous protest material. In June 1972, petitioner stopped withholding income tax and FICA from the wages of his dental assistant and his receptionist, and failed to provide them with a W-2 Form. Petitioner encouraged his employees, patients and other physicians to stop paying Federal income taxes and to join the tax protest movement. *364 On September 13, 1976, petitioner pled guilty to the offense of failure to collect and pay over taxes for calendar quarter ending in 1972 in violation of section 7202. Petitioner was placed on probation for three years. Petitioner stated to Dr. Kirby, another dentist in petitioner's office, that because of his guilty plea he would have to pay back taxes. However, he admitted that the Internal Revenue Service's estimate would be too low because the only accurate records were the patients' charts which were unavailable to the Service without each patient's permission. For the taxable years 1975 through 1978, petitioner did not file tax returns. In the early part of 1979, petitioner submitted Forms 1040 and Forms 1040X for the years 1975, 1976, and 1977, which contained on every line pertaining to income and tax computation the words "Object - 5th Amendment right against self-incrimination." On June 21, 1983, petitioner pled guilty to the willful failure to file an income tax return for the year 1978 in violation of section 7203. On March 17, 1983, when agents of the Internal Revenue Service attempted to serve a grand jury subpoena on Vicky Teague, petitioner's receptionist *365 and bookkeeper, petitioner interceded and instructed Teague not to take the subpoena. It was only after petitioner called the police who admonished petitioner that the agents had a right to be there that Teague took the summons. Petitioner failed to provide any records to the Service upon which a correct tax could be computed. Petitioner destroyed the patient charts in 1979. In the notice of deficiency relating to years 1971 and 1972, issued on November 13, 1981, respondent determined, based on bank deposits and currency income of $24,000, the gross receipts from the business in the amounts of $153,068.91 and $176,305.84. Business expenses and partnership losses were deducted to derive adjusted gross income. One-half of the adjusted gross income was attributed to petitioner and the other half to his wife pursuant to the community property laws of California. The taxable income attributed to petitioner equals $24,304.85 and $55,814.42 in years 1971 and 1972, respectively. In the notice of deficiency issued on April 9, 1984, relating to years 1975 through 1978, respondent determined the gross receipts from the business based on bank deposits and currency payments and petitioner's *366 amount of taxable income (one-half of income and deductions were attributable to his wife) as shown below: Amount of currency
included in gross
Gross receipts
receipts
Taxable income
1975
$148,031.07
0   $33,208.17
1976
187,434.12
302.00
44,541.59
1977
191,624.11
335.00
47,500.08
1978
242,811.53
547.40
64,379.38
Additions to tax under section 6653(b) and section 6654 were also determined in both notices. In the answer filed in docket No. 22930-84, respondent alleged that petitioner received currency in the amount of $10,400 for each year 1975 through 1978 based on the receipt of $200 per week in currency from patients, resulting in increased deficiencies and additions to tax. OPINION Petitioner has conceded that the notice of deficiency correctly computes the amount of taxable deposits and income using the bank deposits method for the years in question, with the exception of the amount of unreported, undeposited currency income. Petitioner has also conceded that the notices of deficiency correctly compute the allowable itemized deductions, business expenses and allowable partnership deductions and income. The notice *367 of deficiency with respect to the years 1971 and 1972 alleges that a currency amount of $24,000 was received in petitioner's business for each of those years. The notice of deficiency is presumed correct and the burden is on petitioner to show that a lesser amount of currency was received than what was alleged in the notice of deficiency. Rule 142(a). However, with respect to the years 1975 through 1978, the burden is on respondent to show that the amounts alleged in the answer, i.e., $10,400 each year, is correct rather than the smaller amounts in the notice. The only testimony presented to establish the amount of currency was that of the dental assistant, Elizabeth Blake, and the assistant bookkeeper, Kay Emerson, who worked for petitioner during the years 1971 and/or 1972. Ms. Blake, who was not responsible for the bookkeeping, estimates that petitioner received approximately $60 a day. Ms. Emerson, who wrote out the receipts for patients, estimated that the amount of currency received was $100 per day. We found her testimony credible. Respondent stated at trial that the amount in the notice of deficiency was based on a figure of $100 a day. Computing on the basis of 240 *368 working days this amounts to $24,000 a year. Petitioner has failed to prove that a lesser amount was received. On brief, however, respondent claims that petitioner received $20,400 for each of the years at issue, 1971, 1972, 1975, 1976, 1977 and 1978, based on an estimate of $100 a day. We do not understand why the amount was lowered from $24,000 to $20,400 for the years 1971 and 1972, and we do not believe that respondent intended to concede these amounts. Accordingly, respondent's determination in the notice of deficiency is sustained with respect to the years 1971 and 1972. With respect to the years 1975 through 1978, respondent by answer determined that the currency received was $10,400 each year. As noted above, respondent on brief increased this amount to $20,400 each year. Respondent relies on the fact that the office procedures were unchanged from the years 1971 and 1972 to years 1975 through 1978. While we agree that petitioner continued to receive currency which was not deposited in the bank during these years, this fact alone is not sufficient to satisfy respondent's burden to show the amount. Petitioner, however, conceded at trial that he received each year an *369 amount at least equal to the $10,400 amount alleged in respondent's answer. Petitioner on brief states that he conceded receiving $20,400 but he does not state for what period of time. Based on his statements at trial, we do not understand why the amount was raised from $10,400 to $20,400 and we do not believe that petitioner intended to concede this higher amount. Based on petitioner's concession at trial, we find that petitioner received $10,400 a year of unreported, undeposited currency income for the years 1975 through 1978 as determined in respondent's answer. The next issue for decision is whether petitioner is liable for the addition to tax under section 6653(b) for fraud.Respondent bears the burden of proving by clear and convincing evidence that petitioner has an underpayment of tax, and that some part of this underpayment is due to fraud. Section 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to conceal, mislead or otherwise prevent the collection of such taxes. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). Fraud is a factual question to be determined upon consideration of the entire record, Gajewski v. Commissioner,67 T.C. 181, 199 (1976), *370 affd, without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed. Beaver v. Commissioner,55 T.C. 85 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971). Respondent need not prove the precise amount of underpayment resulting from fraud, but only that there is some underpayment and that some part of it is attributable to fraud. Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court. Respondent has carried his burden of proving that there was an underpayment of tax for each of the years in question. The record is clear and petitioner has in fact stipulated that he received sufficient taxable income to produce an underpayment of tax for the years in question. Respondent has also carried his burden of proving that the underpayments were due to fraud. Petitioner understood his obligation to file tax returns and report his income from his dental *371 practice as shown by his filed returns in 1969 and 1970. Yet, petitioner failed to file valid Federal income tax returns for the years at issue. United States v. Klee,494 F.2d 394, 397 (9th Cir. 1974); United States v. Porth,426 F.2d 519 (10th Cir. 1970). In support of his loan application at Crocker National Bank, he submitted a completed Form 1040 as his tax return. Thus, he was aware that the Porth-type return was unacceptable. Petitioner's wholesale use of the Fifth Amendment privilege against self-incrimination is wholly unwarranted. To claim the privilege, the taxpayer must be faced with substantial hazards of self-incrimination that are real and appreciable, and must have reasonable cause to apprehend such danger. United States v. Neff,615 F.2d 1235, 1239 (9th Cir. 1980). There is no indication that the furnishing of information regarding the amount of petitioner's income would reveal criminal activity in his dental practice. The privilege may not itself be used as a method of evading payment of lawful taxes. Edwards v. Commissioner,680 F.2d 1268, 1270 (9th Cir. 1982). Petitioner admitted at trial *372 that when he began to pocket the currency, he stopped filling out the Forms 1040 in the proper manner. In order to conceal the receipt of currency, petitioner maintained a double set of books. The cash receipts journal only recorded checks received and deposited in the bank. This journal was submitted to petitioner's accountant as a record of petitioner's gross receipts from his practice.[2] However, the patients' charts were the only accurate records reflecting the amount of income, both checks and currency, received. Petitioner's maintenance of a double set of books is persuasive evidence of fraud. Stone v. Commissioner, supra at 213. Petitioner *373 also obstructed the investigation of the Internal Revenue Service. He failed to provide information to the agents. He wrested his records away from his accountant when informed of the Internal Revenue Service summons.Petitioner also admits to having destroyed the patients charts in 1979, the only records which would accurately reflect the income from his practice. Petitioner's obstruction of the investigation and the destruction of records is highly indicative of fraud. Stone v. Commissioner,supra.
Petitioner was an intelligent, highly educated individual who was aware of his obligation to pay taxes. Yet petitioner deliberately set upon a course of conduct, and encouraged others to do the same, to evade the payment of taxes. Accordingly, we find that the underpayments of tax for the years in question were due to fraud. Section 6654
Petitioner bears the burden of proving that respondent erred in determining petitioner is liable for additions to tax under section 6654. Rule 142(a). Petitioner made no attempt to carry his burden and introduced no evidence that would show respondent's determination is incorrect. We sustain respondent's determination. *374 Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. To support the determination of fraud, respondent relies on petitioner's withholding of information from his accountant. While this type of conduct may be indicative of fraud in some cases, we do not believe this factor is particularly relevant in this case inasmuch as it is agreed that Wilbur did not prepare a return for petitioner in any of the years in question. The records in Wilbur's possession do support respondent's allegation that petitioner maintained a double set of records in his dental practice.↩